Esco W. BAGWELL, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 95–0238.

United States Court of Veterans Appeals.

July 3, 1996.

Esco W. Bagwell, pro se.

Mary Lou Keener, General Counsel; Ron Garvin, Assistant General Counsel; R. Randall Campbell, Deputy Assistant General Counsel; and Patricia Trujillo, Washington, DC, were on the brief, for appellee.

Before NEBEKER, Chief Judge, and KRAMER and FARLEY, Judges.

FARLEY, Judge:

This is an appeal from a January 30, 1995, decision of the Board of Veterans' Appeals (BVA or Board) denying an extra-schedular evaluation pursuant to 38 C.F.R. § 3.321(b)(1) (1995) and denying entitlement to an increased disability rating for blindness in the left eye. This appeal is timely and the Court has jurisdiction pursuant to 38 U.S.C. § 7252(a).

On May 28, 1996, this Court issued a decision which vacated the decision of the BVA and remanded the matter for further adjudication. The Secretary, on June 18, 1996, filed a timely motion for reconsideration. The Secretary's motion is granted, the May 28, 1996, decision is vacated, and this decision is issued in its stead. For the reasons that follow, the Court will vacate the January 30, 1995, decision of the BVA and remand the matter for further adjudication consistent with this opinion.

## I.

The appellant served with the United States Army from 1942 to 1945. Record (R.) at 14. In July 1992, the VA regional office (RO) granted entitlement to disability compensation for blindness in the appellant's left eye resulting from inadequately performed cataract surgery at the Shreveport, Louisiana, VA medical center (VAMC). R. at 274.

The RO treated this disability as if service connected under 38 U.S.C. § 1151 and assigned a 30% rating and special monthly compensation on the basis of the "loss of use of left eye with no light perception." R. at 272–74. As a result, the appellant's combined disability evaluation was increased from 70% to 80%. R. at 274. Individual unemployability was not found. R. at 274.

Shortly thereafter, the appellant filed a Notice of Disagreement arguing that he was entitled to a rating greater than 30% because 30% did not take into account his and his wife's pain and suffering. R. at 279. In addition, he argued that this rating was not sufficient to compensate for expenses incurred as a result of his prolonged hospital stays, including his wife's transportation to and from VAMCs in Dallas and New Orleans and assistance from friends. *Ibid.* In his substantive appeal to the BVA, the appellant argued that he should be rated at 100% based upon his inability to obtain employment. R. at 291. The appellant also requested that the BVA consider results of a March 1993 eye examination, which are not of record, and a letter from a potential employer indicating that he had been denied employment due to his physical disabilities (R. at 293).

The Board issued a decision on January 30, 1995, denying an increased rating for blindness in the left eye. R. at 3–8. The Board found that the appropriate rating for this disability was governed by 38 C.F.R. § 4.84a, Diagnostic Code 6070 (1995) [hereinafter DC 6070], which provides a 30% rating for blindness in one eye where the other eye has vision of 20/40 or better. R. at 6. It appears that the Board did not obtain the results of the March 1993 eye examination because, in its opinion, pursuant to 38 C.F.R. §§ 4.14 and 3.383(a) (1995), the appellant's evaluation would not change unless the veteran was also blind in his right eye. *Ibid.* Finally, the Board concluded that an extraschedular evaluation under 38 C.F.R. § 3.321(b)(1) (1995) was not warranted because the record did not show frequent periods of hospitalization after November 1991 or a marked interference with employment. The issue of total disability due to individual unemployability (TDIU) was referred to the RO (R. at 4) and therefore is not on appeal.

## II.

■ As an initial matter, the Court recognizes that, in pursuing this appeal, the appellant is seeking compensation in an amount which would be commensurate with the financial expenses which he and his wife incurred and the circumstances associated with the treatment he received at the Shreveport VAMC. This Court is unable to award such relief. It is not within the Court's power to award such traditional tort damages as reimbursement for expenses or compensation for "pain and suffering." *See, e.g., Mason v. Brown,* 8 Vet.App. 44, 59 (1995) (Court cannot award punitive damages); *Schleis v. Principi,* 3 Vet.App. 415, 418 (1992) (Court not permitted to take equitable considerations into account). Further, the Court is prohibited by statute from adjusting the schedule of ratings in individual cases. 38 U.S.C. § 7252(b).

## III.

■ In exceptional cases where the schedular evaluation is found to be inadequate, pursuant to 38 C.F.R. § 3.321(b)(1), the Under Secretary for Benefits may approve an extraschedular evaluation

commensurate with the average earning capacity impairment due exclusively to the service-connected disability or disabilities. The governing norm in these exceptional cases is: A finding that the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards.

*See also* Veterans' Medical Programs Amendments of 1992, Pub.L. No. 102–405, § 302(b), 106 Stat.1972 (1992) (redesignating the Chief Benefits Director as the Under Secretary for Benefits). In *Floyd v. Brown,* 9 Vet.App. 88, 95 (1996), where the BVA had purported to grant an extraschedular rating, this Court stated that a claim for an extraschedular rating must be sent by the BVA to those "officials who possess the delegated

authority to *assign* such a rating *in the first instance*," but held that the BVA's failure to so refer to such officials constituted harmless error. Here, the BVA did not purport to grant an extraschedular rating; rather, the Board considered the issue and concluded that an extraschedular rating was not warranted. As *Floyd* specifically noted, the "regulation does not preclude the Board from *considering* whether referral to the appropriate first-line officials is required." *Ibid.* Moreover, we do not read the regulation as precluding the BVA from affirming an RO conclusion that a claim does not meet the criteria for submission pursuant to 38 C.F.R. § 3.321(b)(1) or from reaching such a conclusion on its own. Under these circumstances, the action of the Board was not inconsistent with 38 C.F.R. § 3.321(b)(1).

Nor, in this instance, did the Board's denial of an extraschedular rating in the first instance violate the prejudice safeguard set forth in *Bernard v. Brown,* 4 Vet.App. 384 (1993). The question of an extraschedular rating is a component of the appellant's claim for an increased rating, *Floyd,* 9 Vet.App. at 96, and as the record demonstrates, the appellant had full opportunity to present his increased-rating claim before the regional office. The record also indicates that it was the appellant who raised the issue before the Board and who submitted, as an attachment to his VA Form 1–9, the letter from a potential employer who denied his application "due to your physical disabilities." R. at 293. Thus we conclude that the Board's consideration of his extraschedular rating claim in the first instance did not result in prejudice to the appellant. In the absence of prejudice in the Board's consideration of an extraschedular rating, the Board's determination regarding such a rating does not mandate a remand.

 This conclusion, however, does not end our inquiry. The BVA, in its decisions, is statutorily required to provide a "written statement of the Board's findings and conclusions, and the reasons or bases for those findings and conclusions." 38 U.S.C. § 7104(d). As we said in *Gilbert v. Derwinski,* 1 Vet.App. 49, 57 (1990), "A bare conclusory statement, without both supporting analysis and explanation, is neither helpful to the veteran, nor 'clear enough to permit effective judicial review', nor in compliance with statutory requirements." *See also Gabrielson v. Brown,* 7 Vet.App. 36, 39–40 (1994); *Masors v. Derwinski,* 2 Vet.App. 181, 188 (1992); *Peyton v. Derwinski,* 1 Vet.App. 282, 285 (1991); *Hatlestad v. Derwinski,* 1 Vet.App. 164, 169–70 (1991). The BVA's finding here that the "evidence does not show marked interference with employment resulting" is cursory at best. Of even more significance, the BVA does not even mention the letter from a prospective employer who denies the appellant a position "due to your physical disabilities" notwithstanding the employers conclusion that "[w]e feel that you possess many qualities which would be favorable for this position." R. at 293. A remand is required because the BVA's statement of reasons or bases does not fulfill the requirements of 38 U.S.C. § 7104(d).

### IV.

With regard to the claim for an increased schedular rating, the BVA's decision appears to raise more questions than it resolves. For example, the present record is devoid of any authority for the Secretary's argument that the results of the March 1993 eye examination are irrelevant to the issue of the appellant's request for an increased rating. While the BVA and the Secretary appear to be of the view that 38 C.F.R. §§ 3.383(a) and 4.14 require that impaired vision in the non-service-connected eye be treated as normal in the absence of total blindness, such a conclusion does not necessarily follow from the language of those regulations. Nor is it clear that, as the Secretary argues, DC 6070 (contemplating "Blindness in 1 eye, having only light perception") was the appropriate rating in light of the finding that the appellant's "left eye disability is manifested by blindness in the left eye with *no light perception.*" R. at 4 (emphasis added).

Under the unique circumstances presented by this appeal, however, where an adjudication in favor of the appellant on either the TDIU claim now pending before the RO or the remanded extra-schedular claim could yield a rating of 100%, the Court concludes

that the claim for an increased rating is inextricably intertwined with those claims. *See Harris v. Derwinski,* 1 Vet.App. 180 (1991). Accordingly, the Court will remand the claim for an increased rating for readjudication along with the claims for an extraschedular rating and TDIU.

## V.

Upon consideration of the record, the appellant's informal brief, the brief of the Secretary, and the Secretary's motion for reconsideration of the Court's May 28, 1996, opinion, the January 30, 1995, decision of the Board is VACATED and the matter is REMANDED for action consistent with this opinion. "On remand, the appellant will be free to submit additional evidence and argument." *Quarles v. Derwinski,* 3 Vet.App. 129, 141 (1992).