**Charles E. FLOYD, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 92–970.

United States Court of Veterans Appeals.

July 15, 1996.

Before NEBEKER, Chief Judge, and KRAMER, FARLEY, HOLDAWAY, IVERS and STEINBERG, Judges.

### ORDER

PER CURIAM.

On April 17, 1992, this Court affirmed in part and vacated in part the Board of Veterans' Appeals decision on appeal, and remanded the matter for readjudication. On May 8, 1996, the Secretary filed a motion for reconsideration by panel and by the Court en banc. Upon consideration of the Secretary's motion for reconsideration, it is

ORDERED that the motion for reconsideration by panel is denied. It is

ORDERED that it not appearing that review en banc is necessary either to address a question of exceptional importance to the administration of laws affecting veterans benefits or to secure or maintain uniformity of the Court's decisions, it is

ORDERED that the Secretary's motion for review by the Court en banc is denied.

STEINBERG, *Judge,* dissenting:

I voted to grant the Secretary's motion for en banc review because not only do I believe that the opinion was wrong in a major respect but I also believe that full Court consideration is necessary to address a question of exceptional importance to the administration of laws affecting veterans' benefits. *See* U.S. Vet.App.R. 35(c). My reasons for believing that the opinion is incorrect in its part II.A.2. are fully discussed in my separate opinion, dissenting as to portions of that part of the majority opinion regarding the extraschedular rating. *Floyd v. Brown,* 9 Vet. App. 88, 98–104 (1996). I continue to believe the opinion was in error in that respect; however, as explained below, my reasons for voting for en banc review have changed somewhat as a result of a subsequent development.

Some additional reasons worthy of note have been stated by the Secretary in his motion for full Court review. Specifically, the Secretary points out that the distinction drawn by the Court between the Board's authority to *consider referral* of exceptional cases and its lack of authority to *adjudicate* the claim is "overstated", given the "BVA's assessment of the facts of a case, contemplation (and rejection) of schedular standards[,] and referral of the matter to the rating board as exceptional under 38 C.F.R. § 3.321(b)(1)". Motion (Mot.) at 3. Such consideration by the Board "would be tanta-

mount to a full adjudication of the merits of the claim for an [extra-schedular] increased rating". *Ibid.* Hence, "[i]t would exalt form over substance to require the BVA to remand the extra-schedular rating issue where, as here, the BVA is prepared to grant the benefit sought." Mot. at 3–4.

Fortunately, much of the impact of the *Floyd* opinion, which was dictum because of its failure to vacate the Board's award of the 10% extra-schedular rating, has now been vitiated by the Court's issuance on July 3, 1996, of a reconsideration opinion in *Bagwell v. Brown*, 9 Vet.App. 337, 338–39 (1996). In *Bagwell*, the Court wisely refused to apply the *Floyd* dictum to a situation where the BVA had considered and denied an extra-schedular rating, thereby avoiding fruitless remands in such cases.

Hence, the state of current law as to the Board's authority to act on extra-schedular ratings in the first instance is that the Board has full authority to consider and deny such a rating, *see Bagwell, supra,* and, although *Floyd* suggests that the BVA does not have authority to *award* such a rating, *Floyd holds* that when the Board does so there is no error prejudicial to the appellant and so the Court will affirm the supposedly *ultra vires* action of the Board. *Floyd,* 9 Vet.App. at 95. Moreover, if there is no prejudice to the appellant in *Floyd* where the appellant specifically sought an extra-schedular rating greater than the 10% that the Board had awarded there and persisted in arguing for vacatur of the BVA decision and a remand of the case on the extra-schedular rating despite the risk that, if the Court were to hold that the Board lacked authority to award an extra-schedular rating in the first instance, he might lose the 10% additional rating, then it is difficult to see how there could ever be prejudice when the BVA awards an extra-schedular rating in the first instance. For example, even where the Board committed error in failing to articulate an adequate statement of reasons or bases, under 38 U.S.C. § 7104(d)(1), for its extra-schedular award, as the majority opinion in *Floyd* seemed to conclude, 9 Vet.App. at 96–97, and I did in my separate opinion, *id.* at 102 n. 9,

had occurred in *Floyd,* there would apparently be no prejudice that would warrant action other than affirmance.

Even though much of the likely untoward effect of the *Floyd* opinion has been emasculated by *Bagwell* and the Court's own lack of a remedy in *Floyd,* I continue to conclude that the standard for en banc review is satisfied. I so conclude for two very different reasons—one practical and one theoretical. As a practical matter, the majority has reached a result that could, if heeded (it is presumed, of course, that the Secretary will follow the law as interpreted by the Court), produce unnecessary and superfluous delay for many claimants who would prefer the option of direct BVA review and award (as well as for other claimants whose cases will be delayed by the unnecessary hoops that the majority opinion would force the Department of Veterans Affairs (VA) to jump through in such extra-schedular cases), before an extra-schedular award (not ruled upon by a VA regional office (RO) first) could ultimately be awarded. Moreover, no claimant's rights are being truly protected by forcing referral to a VARO when the Board believes that an extra-schedular award is in order. *Cf. Bagwell, supra.* That is because, as pointed out in my separate opinion in *Floyd* (parts B and C, especially note 9), 9 Vet.App. at 101–04, the application of *Bernard v. Brown,* 4 Vet.App. 384, 392–93 (1993), and *Curry v. Brown,* 7 Vet.App. 59 (1994), requires the Board to advise a claimant of the prejudice possible if the Board were to proceed to decide the extra-schedular-rating issue in the first instance, thereby, in essence, giving the claimant the choice of forum for initial adjudication of entitlement to such a rating.

Equally important, as a matter of legal theory, the majority opinion in *Floyd* has conjured up an idea of nonprejudicial BVA action which departs from any common understanding of that term. (Prejudicial error is an error "substantially affecting [an] appellant's legal rights and obligations", BLACK'S LAW DICTIONARY 1179 (6th ed.1990).) As noted above, even where the BVA blatantly failed to explain why an extra-schedular rating greater than the one awarded had

been denied, the Court will apparently not remand for the Board to provide an adequate statement of reasons or bases, under 38 U.S.C. § 7104(d)(1), for its denial, because, I suppose, the granting of such greater award would be considered an *ultra vires* action. Yet, the Court's affirmance of the Board's putative *ultra vires* action has denied the appellant appropriate review of the extra-schedular rating (that is, there is no referral to the Director of the Compensation and Pension Service and there is no review by this Court as to the merits of the rating) as part of his increased-rating claim that was on appeal to this Court, and has hence denied him an opportunity to receive greater than a 10% extra-schedular rating as part of the current claim. That seems like clear prejudice to me. Although, in essence, the Court has granted (not denied) the Secretary's motion for an en banc review, in that the *Bagwell* panel opinion has eviscerated most of whatever thrust *Floyd* had before *Bagwell,* the en banc Court should not allow the law to be left in such disarray on the prejudice question.

The extra-schedular rating is entirely a creature of the Secretary's regulatory authority. The Court's crabbed reading of VA regulations forgoes an at least equally plausible interpretation of the regulatory scheme, as well as of the Board's basic role and function as set forth in law and regulation, that would have given appropriate deference to the Secretary's construction of his own regulation and delegation of authority. Fortunately, *Floyd* can be relegated to an appropriate final resting place by the Secretary who with a stroke of his pen can remove from the regulations in question any perceived ambiguity as to the Board's authority to award an extra-schedular rating in the first instance.