Citation Nr: 1434235 
Decision Date: 07/31/14 Archive Date: 08/04/14

DOCKET NO. 07-32 938 ) DATE
 )
 )

Received from the
Department of Veterans Affairs Regional Office in North Little Rock, Arkansas


THE ISSUES

1. Entitlement to an initial rating higher than 20 percent for right lower extremity radiculopathy.

2. Entitlement to an initial rating higher than 20 percent for left lower extremity radiculopathy.

3. Entitlement to a rating higher than 30 percent for posttraumatic stress disorder (PTSD) since October 1, 2005.


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

The Veteran
ATTORNEY FOR THE BOARD

B. Elwood, Counsel


INTRODUCTION

The Veteran served on active duty from October 1973 to October 1980.

These matters come before the Board of Veterans' Appeals (Board) from a January 2007 decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Oakland, California. In that decision, a Decision Review Officer (DRO) granted service connection for a degenerative lumbar disc disability and assigned an initial 20 percent disability rating, effective from April 30, 1999 to July 28, 2003 and since October 1, 2003. (The DRO granted a temporary total (100 percent) rating due to surgery requiring convalescence from July 28, 2003 to October 1, 2003.) 

In December 2007, the RO granted a TDIU, effective May 29, 2007. 

The Veteran testified before the undersigned at a January 2010 videoconference hearing. A transcript of the hearing has been associated with his claims folder.

In August 2010, the Board denied an appeal for a higher initial rating for a degenerative lumbar disc disability. The Veteran appealed the Board's denial to the United States Court of Appeals for Veterans Claims (Court).

In May 2011, the Court set aside the Board's August 2010 decision, in part, and remanded the case for readjudication in compliance with directives specified in a May 2011 Joint Motion filed by counsel for the Veteran and VA. In pertinent part, the Joint Motion specified that the parties only sought remand as to that portion of the Board's decision that denied entitlement to a higher initial rating for the service-connected back disability. 

In March 2012, the Board remanded the issue of entitlement to a higher initial rating for the service-connected back disability for further development in compliance with the Joint Motion.

In October 2012, the Appeals Management Center (AMC) granted service connection for right lower extremity radiculopathy as part of the service-connected back disability and assigned the following initial ratings: a 10 percent rating, effective from September 23, 2002 to April 18, 2012; and a 20 percent rating, effective from April 18, 2012. 

In March 2013, the Board granted separate initial 20 percent ratings for radiculopathy of the right and left lower extremities, both effective from September 23, 2002. The Appeals Management Center implemented this decision in a March 2013 rating decision. The Veteran appealed the Board's decision to the Court.

In September 2013, the Court set aside the Board's March 2013 decision, in part, and remanded the case for readjudication in compliance with directives specified in a September 2013 Joint Motion filed by counsel for the Veteran and VA. In pertinent part, the Joint Motion specified that the parties only sought remand as to that portion of the Board's decision that denied entitlement to initial ratings higher than 20 percent for radiculopathy of the right and left lower extremities. The Joint Motion did not pertain to the Board's grant of a higher initial rating for the service-connected back disability. 

The Veteran had also perfected an appeal with regard to the issue of entitlement to service connection for a psychiatric disability, and the Board remanded the matter in March 2013 for further development. In February 2014, the RO granted service connection for PTSD, and thereby resolved the appeal as to that issue.

(The appeal for a higher rating for PTSD is addressed in the remand that follows the decision below.)


FINDINGS OF FACT

1. Since September 23, 2002, right lower extremity radiculopathy has been manifested by moderate sciatic neuritis.

2. Since September 23, 2002, left lower extremity radiculopathy has been manifested by moderate sciatic neuritis.


CONCLUSIONS OF LAW

1. The criteria for an initial rating higher than 20 percent for right lower extremity radiculopathy have not been met. 38 U.S.C.A. §§ 1155, 5107(b) (West 2002); 38 C.F.R. §§ 3.321(b)(1), 4.1, 4.2, 4.7, 4.10, 4.21, 4.123, 4.124, 4.124a, Diagnostic Code (DC) 8520 (2013).

2. The criteria for an initial rating higher than 20 percent for left lower extremity radiculopathy have not been met. 38 U.S.C.A. §§ 1155, 5107(b); 38 C.F.R. §§ 3.321(b)(1), 4.1, 4.2, 4.7, 4.10, 4.21, 4.123, 4.124, 4.124a, DC 8520.


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veterans Claims Assistance Act of 2000 as amended (VCAA) and implementing regulations impose obligations on VA to provide claimants with notice and assistance. 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107, 5126 (West 2002 & Supp. 2013); 38 C.F.R §§ 3.102, 3.156(a), 3.159, 3.326(a) (2013).

The appeal for higher initial ratings for radiculopathy of the right and left lower extremities arises from the Veteran's disagreement with the initial ratings assigned after the grant of service connection. The courts have held, and VA's General Counsel has agreed, that where an underlying claim of service connection has been granted and there is disagreement as to "downstream" questions, the claim has been substantiated and there is no need to provide additional VCAA notice. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007); VAOPGCPREC 8-2003 (2003). 

The United States Court of Appeals for Veterans Claims (Court) has elaborated that filing a notice of disagreement begins the appellate process, and any remaining concerns regarding evidence necessary to establish a more favorable decision with respect to downstream elements (such as initial rating) are appropriately addressed under the notice provisions of 38 U.S.C.A. §§ 5104 and 7105. Goodwin v. Peake, 22 Vet. App. 128 (2008). 

The VCAA also requires VA to make reasonable efforts to help a claimant obtain evidence necessary to substantiate his claim. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159(c), (d). This "duty to assist" contemplates that VA will help a claimant obtain records relevant to his claim, whether or not the records are in Federal custody, and that VA will provide a medical examination or obtain an opinion when necessary to make a decision on the claim. 38 C.F.R. § 3.159(c)(4). 

VA obtained the Veteran's service treatment records, pertinent service personnel records, Social Security Administration (SSA) disability records, and all of the identified relevant post-service VA treatment records and private medical records. In addition, he was afforded VA examinations to assess the severity of his service-connected radiculopathy of the right and left lower extremities.

Although the most recent VA examination for the Veteran's service-connected radiculopathy of the right and left lower extremities took place in 2012, he has not reported any change in his disability since that time, and the record does not otherwise suggest any changes. Palczewski v. Nicholson, 21 Vet. App. 174 (2007) (mere passage of time does not trigger need for a new VA examination, absent evidence of a change in the disability). Thus, a new VA examination for the service-connected radiculopathy of the right and left lower extremities need not be conducted.

In its March 2012 remand, the Board instructed the agency of original jurisdiction (AOJ) to, among other things, obtain all additional treatment records from the Central Arkansas VA Healthcare System dated since October 2009 and afford the Veteran a VA examination to assess the severity of his service-connected back disability (to include an assessment of any neurologic impairment associated with the service-connected back disability). As explained above, all relevant post-service treatment records (including those from the Central Arkansas VA Healthcare System) have been obtained and associated with the claims file. Additionally, a VA examination was conducted to assess the severity of the Veteran's service-connected back disability with associated neuropathy in April 2012. This examination was thorough, contained all pertinent findings, and was responsive to the questions posed by the Board. 

Therefore, with regard to the claims decided herein, the AOJ substantially complied with all of the Board's pertinent March 2012 remand instructions. VA has no further duty to obtain any additional records or provide additional examinations with respect to the appeal for higher ratings for radiculopathy of the right and left lower extremities. See Dyment v. West, 13 Vet. App. 141, 146- 47 (1999); Stegall v. West, 11 Vet. App. 268 (1998).

Analysis

Disability evaluations are determined by the application of rating criteria set forth in the VA Schedule for Rating Disabilities (38 C.F.R. Part 4) based on the average impairment of earning capacity. Separate diagnostic codes identify the various disabilities. 38 U.S.C.A. § 1155.

Where service connection has been granted and the assignment of an initial evaluation is disputed, separate evaluations may be assigned for separate periods of time based on the facts found. In other words, the evaluations may be "staged." Fenderson v. West, 12 Vet. App. 119, 125-126 (1999).

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. See 38 C.F.R. § 4.7.

In view of the number of atypical instances it is not expected, especially with the more fully described grades of disabilities, that all cases will show all the findings specified. Findings sufficiently characteristic to identify the disease and the disability therefrom, and above all, coordination of rating with impairment of function will, however, be expected in all instances. 38 C.F.R. § 4.21.

The medical as well as industrial history is to be considered, and a full description of the effects of the disability upon ordinary activity is also required. 38 C.F.R. §§ 4.1, 4.2, 4.10.

The Veteran's radiculopathy of the right and left lower extremities is rated under 38 C.F.R. § 4.124a, DC 8520 as paralysis of the sciatic nerve. Paralysis of the sciatic nerve is rated as follows: a 10 percent rating is warranted for mild incomplete paralysis; a 20 percent rating is warranted for moderate incomplete paralysis; a 40 percent rating is warranted for moderately severe incomplete paralysis; a 60 percent rating is warranted for severe incomplete paralysis with marked muscular atrophy; and an 80 percent rating is warranted for complete paralysis resulting in the foot dangling and dropping, no possible active movement of muscles below the knee, and weakened or (very rarely) lost flexion of the knee. 38 C.F.R. § 4.124a, DC 8520.

The rating schedule provides guidance for rating neurologic disabilities. With regard to rating neurologic disabilities, cranial or peripheral neuritis, characterized by loss of reflexes, muscle atrophy, sensory disturbances, and constant pain, at times excruciating, is to be rated on the scale provided for injury of the nerve involved, with a maximum equal to severe, incomplete, paralysis. 38 C.F.R. § 4.123. 

The maximum rating that can be assigned for neuritis not characterized by organic changes will be that for moderate, or with sciatic nerve involvement, for moderately severe, incomplete paralysis. Id. Cranial or peripheral neuralgia, usually characterized by a dull and intermittent pain, of typical distribution so as to identify the nerve, is to be rated on the same scale, with a maximum equal to moderate incomplete paralysis. 38 C.F.R. § 4.124.

The term "incomplete paralysis" indicates a degree of lost or impaired function substantially less than the type pictured for complete paralysis given with each nerve, whether due to varied level of the nerve lesion or to partial regeneration. When the involvement is wholly sensory, the rating should be for the mild, or at most, the moderate degree. 38 C.F.R. § 4.124a.

In this case, a September 2001 VA examination report reveals that the Veteran reported back pain which radiated down both legs. He was able to walk 5 minutes and sit for 1 to 2 minutes before the onset of pain. Examination revealed that he used a cane for ambulation. There was excellent muscle bulk and definition, but the Veteran was unable to heel or toe walk because it caused back pain. Reflexes were somewhat diminished (1+) in the left knee and both ankles, but a sensory examination was inconclusive. The Veteran was diagnosed as having degenerative discopathy, osteophyte formation, and degenerative arthritic changes at L1-L2. 

Medical records dated from September 2002 to April 2012, the Veteran's SSA disability records, statements by the Veteran dated in November 2003, October 2007, July 2008, and December 2011, his testimony during the January 2010 hearing, and a statement from his friend dated in June 2008 include reports of back pain which occasionally radiated down both lower extremities to the feet, numbness, tingling, and weakness in the lower extremities bilaterally (more severe on the right), and muscle spasms. The radiating back pain was constant, sharp and burning in nature, 6-10/10 in intensity, exacerbated by prolonged standing, sitting, walking, and lifting, and alleviated with heat and medications (e.g. gabapentin, diclofinac, methacarbomal). Such medications provided intermittent improvement of the Veteran's symptoms. The pain limited his ability to stand and sleep. He was able to walk with a cane, walker, or Canadian crutch, but he avoided using stairs. 

Examinations revealed that the Veteran used a cane and walker for ambulation and had an occasional antalgic gait. Muscle strength associated with the iliopsoas and plantar flexion and dorsiflexion was normal (5/5) bilaterally and muscle strength associated with left knee motion was normal. However, there was some extensor hallucis longus weakness on the right and muscle strength associated with knee and hip motions and the quadriceps were occasionally impaired. Reflexes were occasionally absent to somewhat diminished (1+) at the knees and ankles bilaterally. There was pain with bilateral straight leg lifts. The Veteran's toes were downgoing bilaterally and he was able to walk on his heels and toes. However, sensation was occasionally diminished in both lower extremities. Also, there was some lower extremity muscle atrophy. An electromyography revealed chronic right L4-L5 radiculopathy. The Veteran was diagnosed as having sciatica. 

An April 2012 VA examination report indicates that the Veteran's back symptoms had been treated with various medications, including oral narcotics, Tramadol, Gabapentin, and Etodolac. Such medications were helpful in reducing, but not eliminating, his back and radicular pain. He was scheduled to start physical therapy. He was able to sit for 40 minutes, stand and walk for 15 minutes, climb one flight of stairs slowly, and lift 10 pounds. However, he was unable to run. He used a cane for ambulation.

Examination revealed that the Veteran had a normal posture and gait. Straight leg raise testing was positive on the right and negative on the left, tandem gait was normal, and the Veteran was able to stand and walk on the balls of the feet and on the heels. Deep tendon reflexes were trace at the right ankle and somewhat diminished at the left ankle, but reflexes were otherwise normal (2+) bilaterally, motor strength was normal (5/5) in the lower extremities, there was no weakness or paralysis in any muscle group, and sensation was intact to light touch, vibration, pinprick, and proprioception bilaterally. A diagnosis of moderate right lower extremity radiculopathy was provided.

The above evidence reflects that since September 23, 2002, the symptoms associated with the Veteran's service-connected radiculopathy of the right and left lower extremities have more closely approximated the criteria for a 20 percent rating (indicative of moderate impairment) under DC 8520. Such symptoms include radiating pain to the buttocks and legs, occasional right lower extremity muscle atrophy (occasionally described as "considerable" and "marked"), occasional numbness and weakness in the lower extremities (more pronounced on the right), muscle spasms, and occasionally absent to somewhat diminished (1+) deep tendon reflexes at the knees and ankles. Despite the fact that these symptoms include more than sensory involvement (e.g. muscle atrophy, impaired reflexes, muscle weakness), the majority of the Veteran's objectively measurable neurologic symptoms have only occasionally been present and the only consistent symptoms throughout the claim period involve sensory impairment (e.g. radiating pain, numbness, tingling). This is particularly the case with muscle atrophy and absent reflexes in that muscle atrophy has only occasionally been observed and reflexes have predominantly been normal to only somewhat diminished (1+). Also, the Veteran's symptoms are somewhat relieved by medications.

Moreover, the examiner who conducted the April 2012 VA examination diagnosed the Veteran as having "moderate" right lower extremity radiculopathy, despite the fact that deep tendon reflexes were trace at the right ankle during the examination. Some of the Veteran's neurologic symptoms (particularly numbness and weakness) have been found to be more pronounced/severe on the right during the claim period. As the right lower extremity radiculopathy has been described as moderate by a VA physician and some symptoms have been more pronounced on that side, it stands to reason that the left lower extremity radiculopathy is also no more than moderate because the symptoms on the left are not as severe. Although there are some references to "considerable" or "marked" muscle atrophy in the right lower extremity, such assessments have only occasionally been made. The absence of any consistent clinical findings of muscle atrophy along with the other clinical neurologic findings weighs against a finding of moderately severe incomplete paralysis during the claim period. Also, there has been no evidence of complete paralysis of a lower extremity resulting in the foot dangling and dropping and no possible active movement of muscles below the knee. 

Given the nature and frequency of the above-described symptoms and the otherwise normal neurologic findings during clinical evaluations, the Board finds that the symptoms associated with the radiculopathy of the right and left lower extremities have been at worst moderate since September 23, 2002. Accordingly, initial ratings higher than 20 percent for radiculopathy of the right and left lower extremities are not warranted at any time during the claim period, and the appeal is denied. 38 U.S.C.A. §§ 1155, 5107(b); 38 C.F.R. §§ 4.7, 4.124, 4.124a, DC 8520. The basis of the September 2013 Joint Motion was that the Board had not adequately discussed whether the Veteran was entitled to initial ratings higher than 20 percent for radiculopathy of the right and left lower extremities.

Extraschedular

Pursuant to 38 C.F.R. § 3.321(b)(1), the Under Secretary for Benefits or the Director, Compensation and Pension Service, is authorized to approve an extraschedular evaluation if the case "presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards." 38 C.F.R. § 3.321(b)(1). The question of an extraschedular rating is a component of a claim for an increased rating. See Bagwell v. Brown, 9 Vet. App. 337, 339 (1996). The Board must specifically consider whether to refer a case for extraschedular evaluation when the issue either is raised by the claimant or is reasonably raised by the evidence of record. Barringer v. Peake, 22 Vet. App. 242, 244 (2008). 

If the evidence raises the question of entitlement to an extraschedular rating, the threshold factor for extraschedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. Therefore, initially, there must be a comparison between the level of severity and symptomatology of a claimant's service-connected disability with the established criteria found in the rating schedule for that disability. Thun v. Peake, 22 Vet. App. 111 (2008), aff'd sub nom, Thun v. Shinseki, 572 F.3d 1366 (Fed. Cir. 2009).

Under the approach prescribed by VA, if the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule, the assigned schedular evaluation is, therefore, adequate, and no referral is required. In the second step of the inquiry, however, if the schedular evaluation does not contemplate the claimant's level of disability and symptomatology and is found inadequate, the RO or Board must determine whether the claimant's exceptional disability picture exhibits other related factors such as those provided by the regulation as "governing norms." 38 C.F.R. 3.321(b)(1) (related factors include 'marked interference with employment and frequent periods of hospitalization).

There is no allegation or evidence of exceptional factors in this appeal with respect to the Veteran's service-connected radiculopathy of the right and left lower extremities. The symptoms associated with this disability are specifically contemplated by the rating criteria as set forth above. Thus, referral for consideration of an extraschedular evaluation is not warranted. 38 C.F.R. § 3.321(b)(1).


ORDER

Entitlement to an initial rating higher than 20 percent for right lower extremity radiculopathy is denied.

Entitlement to an initial rating higher than 20 percent for left lower extremity radiculopathy is denied.


REMAND

The agency of original jurisdiction (AOJ) granted service connection for PTSD by way of a February 2014 rating decision and assigned the following initial ratings: a 70 percent rating from March 2, 2005 to June 28, 2005, a temporary total (100 percent) rating from June 28, 2005 to October 1, 2005, under 38 C.F.R. § 4.29, and a 30 percent rating from October 1, 2005. In April 2014, the Veteran submitted a notice of disagreement (VA Form 21-4138) with respect to the assignment of an initial 30 percent rating for PTSD since October 1, 2005. A statement of the case has not been issued as to this issue. 38 U.S.C.A. § 7105(a) (West 2002). Thus, the Board is required to remand this issue for issuance of the necessary statement of the case. Manlincon v. West, 12 Vet. App. 238 (1999). (Although the AOJ sent the Veteran a letter suggesting that his notice of disagreement was premature, the Board finds that it was not. The 30 percent was assigned as part of the initial rating process and he was given an award letter that showed the change in rating and corresponding change in compensation effective from October 1, 2005.)

Accordingly, the case is REMANDED for the following action:

The AOJ should issue a statement of the case as to the issue of entitlement to a rating higher than 30 percent for PTSD since October 1, 2005. If, and only if, a substantive appeal is thereafter timely filed, this issue should be returned to the Board.

The Veteran has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2013).



________________________________
MARK F. HALSEY
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs