Citation Nr: 1443672 
Decision Date: 09/30/14 Archive Date: 10/06/14

DOCKET NO. 12-17 305 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Montgomery, Alabama



THE ISSUE

Entitlement to a compensable evaluation for residuals of shrapnel wounds to the right forearm, right thigh, and right back.



REPRESENTATION

Appellant represented by: Alabama Department of Veterans Affairs



ATTORNEY FOR THE BOARD

Ryan Frank, Associate Counsel



INTRODUCTION

The Veteran served on active duty from September 1974 to September 1977. He has been awarded a Purple Heart Medal among other awards.

This matter initially came before the Board of Veterans' Appeals (Board) on appeal from a rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Montgomery, Alabama.

This appeal was previously before the Board in January 2014. The Board remanded it for additional development, and it has been returned to the Board for further review. 

A review of the Veteran's Virtual VA electronic claims file and the Veterans Benefits Management System (VBMS) paperless claims processing system reveals records that are irrelevant or duplicative of the evidence in the paper claims file. 


FINDINGS OF FACT

1. The Veteran's scars residual to shrapnel wounds to the right forearm, right thigh, and right back cover a combined area of less than 144 square inches and have not been painful or unstable. 

2. The Veteran has mild paralysis of the radial nerve residual to shrapnel wounds to the right forearm. He is right handed.


CONCLUSIONS OF LAW

1. The criteria for a compensable rating for scars residual to shrapnel wounds to the right forearm, right thigh, and right back have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2002 & Supp. 2013); 38 C.F.R. §§ 3.102, 3.159, 3.321, 4.1, 4.2, 4.3, 4.7, 4.10, 4.118, Diagnostic Codes 7801, 7802, 7804, 7805 (2013).

2. With resolution of reasonable doubt in the appellant's favor, the criteria for a separate 20 percent rating, but no more, for paralysis of the radial nerve have been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.159, 3.321, 4.1, 4.2, 4.3, 4.7, 4.10, 4.120, 4.124a, Diagnostic Code 8514 (2013).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Veterans Claims Assistance Act

The Veterans Claims Assistance Act of 2000 (VCAA), in part, describes VA's duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126 (West 2002 & Supp. 2013); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2013).

VA is required to notify the claimant and his or her representative of any information, and any medical or lay evidence, not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); Quartuccio v. Principi, 16 Vet. App. 183 (2002). 

The duty to notify in this case was satisfied by a letter sent to the Veteran in December 2009. The claim was last adjudicated in June 2014.

The record also reflects that VA has made reasonable efforts to obtain relevant records adequately identified by the Veteran, including service treatment records, service personnel records, VA treatment records, and written statements of the Veteran.

Pursuant to the January 2014 Board remand, VA requested an additional VA examination, which the Veteran was afforded in March 2014. All additional evidence was associated with the claims file and considered in the June 2014 supplemental statement of the case. The Veteran indicated in July 2014 that he had nothing more to submit. Therefore, the Board finds there was substantial compliance with the previous remand directives. See Dyment v. West, 13 Vet. App. 141 (1999).

In sum, the VCAA provisions have been considered and complied with. The Veteran was notified and aware of the evidence needed to substantiate his claim, the avenues through which he might obtain such evidence, and the allocation of responsibilities between himself and VA in obtaining such evidence. The Veteran was an active participant in the claims process by submitting evidence and argument. Thus, the Veteran was provided with a meaningful opportunity to participate in the claims process and has done so. Any error in the sequence of events or content of the notices is not shown to have affected the essential fairness of the adjudication or to cause injury to the Veteran. Therefore, any such error is harmless and does not prohibit consideration of this matter on the merits.

Relevant Laws and Regulations

Disability evaluations are determined by the application of the VA's Schedule for Rating Disabilities (Rating Schedule), 38 C.F.R. Part 4 (2013). The percentage ratings in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during military service and their residual conditions in civil occupations. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1.

In order to evaluate the level of disability and any changes in condition, it is necessary to consider the complete medical history of a veteran's condition. Schafrath v. Derwinski, 1 Vet. App. 589, 594 (1991). Where an increase in the level of a service-connected disability is at issue, the primary concern is the present level of disability. Francisco v. Brown, 7 Vet. App. 55 (1994). There may be various ratings assigned during the appeal period where there are fluctuating symptoms. This could result in "staged" ratings. See Hart v. Mansfield, 21 Vet. App. 505 (2007).

Where there is a question as to which of two disability evaluations shall be applied, the higher evaluation is to be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating is to be assigned. 38 C.F.R. § 4.7.

Deep and nonlinear scars that are not of the head, face, or neck are evaluated as follows: area of 144 square inches or greater (40 percent); area of 72-144 square inches (30 percent); area of 12-72 square inches (20 percent); and area of 6-12 square inches (10 percent). 38 C.F.R. § 4.118, Diagnostic Code 7801. Diagnostic Code 7801, Note (1) defines a deep scar as "one associated with underlying soft tissue damage."

Superficial and nonlinear scars that are not of the head, face, or neck are evaluated as follows: area of 144 square inches or greater (10 percent). 38 C.F.R. § 4.118, Diagnostic Code 7802. Diagnostic Code 7802, Note (1) defines a superficial scar as "one not associated with underlying soft tissue damage."

Unstable or painful scars are evaluated as follows: five or more scars that are unstable or painful (30 percent); three or four scars that are unstable or painful (20 percent); and one or two scars that are unstable or painful (10 percent). 38 C.F.R. § 4.118, Diagnostic Code 7804.

38 C.F.R. § 4.118, Diagnostic Code 7805 applies to other scars, including linear scars, and "other effects of scars evaluated under diagnostic codes 7800, 7801, 7802, and 7804." Diagnostic Code 7805 contains the instruction "Evaluate any disabling effect(s) not considered in a rating provided under diagnostic codes 7800-04 under an appropriate diagnostic code."

Paralysis of the radial nerve is evaluated as follows: complete paralysis in the major extremity (70 percent); severe paralysis in the major extremity (50 percent); moderate paralysis in the major extremity (30 percent); and mild paralysis in either extremity (20 percent). 38 C.F.R. § 4.124a, Diagnostic Code 8514. 

Diagnostic Code 8514 defines "complete" paralysis of the radial nerve in the following manner: "drop of hand and fingers, wrist and fingers perpetually flexed, the thumb adducted falling within the line of the outer border of the index finger; cannot extend hand at wrist, extend proximal phalanges of fingers, extend thumb, or make lateral movement of wrist; supination of hand, extension and flexion of elbow weakened, the loss of synergic motion of extensors impairs the hand grip seriously; total paralysis of the triceps occurs only as the greatest rarity." 

Under 38 C.F.R. § 4.124a, disability from neurological disorders is rated from 10 to 100 percent in proportion to the impairment of motor, sensory, or mental function. With partial loss of use of one or more extremities from neurological lesions, rating is to be by comparison with mild, moderate, severe, or complete paralysis of the peripheral nerves.

The term "incomplete paralysis" indicates a degree of lost or impaired function substantially less than the type of picture for complete paralysis given with each nerve, whether due to varied level of the nerve lesion or to partial regeneration. When the involvement is only sensory, the rating should be for the mild or, at most, the moderate degree. 38 C.F.R. § 4.124a.

In rating peripheral nerve disability, neuritis, characterized by loss of reflexes, muscle atrophy, sensory disturbances, and constant pain, at times excruciating, is to be rated on the scale provided for the injury of the nerve involved, with a maximum equal to severe, incomplete paralysis. The maximum rating to be assigned for neuritis not characterized by organic changes referred to in this section will be that for moderate incomplete paralysis, or with sciatic nerve involvement, for moderately severe incomplete paralysis. 38 C.F.R. § 4.123.

In rating peripheral nerve injuries and their residuals, attention should be given to the site and character of the injury, the relative impairment and motor function, trophic changes, or sensory disturbances. Special consideration should be given to any psychotic manifestations, complete or partial loss of use of one or more extremities, speech disturbances, impairment of vision, disturbances of gait, tremors, visceral manifestations, and injury to the skull. 38 C.F.R. § 4.120.

The words "mild," "moderate," and "severe" as used in the various diagnostic codes are not defined in the VA Rating Schedule. Rather than applying a mechanical formula, the Board must evaluate all of the evidence, to the end that its decisions are "equitable and just." 38 C.F.R. § 4.6 (2013). 

Analysis

The Veteran sustained shrapnel wounds to his right forearm, right thigh, and right back while on active duty in May 1975. Service treatment records from the time of the injury note decreased sensation in the Veteran's wounded arm. Motor and vascular findings in the arm and leg were noted to be "ok."

In May 1979, the Veteran brought a claim for, among other things, "gunshot & shrapnel wounds & scars" and "numbness in right arm & shoulder." In December 1979, the RO granted service connection for "Residuals, shrapnel fragment wounds, rt. forearm, rt. thigh and rt. back" and assigned a noncompensable rating under 38 C.F.R. § 4.118, Diagnostic Code 7805. The version of Diagnostic Code 7805 in effect in 1979 bore the label "Scars, other" and contained the instruction "Rate on limitation of function of part affected." 

The Veteran brought the instant claim in March 2009, after the current version of 38 C.F.R. § 4.118 took effect. The current version of Diagnostic Code 7805 bears the label "Scars, other (including linear scars) and other effects of scars evaluated under diagnostic codes 7800, 7801, 7802 and 7804" and contains the instruction "Evaluate any disabling effect(s) not considered in a rating provided under diagnostic codes 7800-04 under an appropriate diagnostic code." In adjudicating the claim in June 2010, the RO did not apply a diagnostic code for any other disorder related to the Veteran's shrapnel wounds. Although the RO does not cite them, it appears to have considered Diagnostic Codes 7802 and 7804 in evaluating the scars themselves. Diagnostic Code 7802 allows a compensable rating for superficial, nonlinear scars only if their area exceeds 144 square inches. Diagnostic Code 7804 allows a compensable rating for unstable or painful scars. 

The Veteran's VA treatment records and service treatment records contain no mention of any treatment specifically for his scars. 

On remand, the Veteran was afforded an additional VA examination; the examiner completed her report in April 2014. The examiner found that the Veteran's scars were neither painful nor unstable. Diagnostic Code 7804 requires that the Veteran have at least one scar that is unstable or painful to receive a compensable rating. The examiner also found that the total surface area of the scars equaled 10.81 square centimeters (or 1.67 square inches). Diagnostic Code 7802 requires a minimum total surface area of 144 square inches for a compensable rating for nonlinear, superficial scars. The examiner noted a "single small metallic fragment embedded in soft tissues of upper arm." One of the Veteran's scars might, therefore, meet Diagnostic Code 7801, Note (1)'s definition of a deep scar: "one associated with underlying soft tissue damage." However, even if every one of the Veteran's scars were deep, their total combined surface area is 1.67 square inches, and Diagnostic Code 7801 requires a minimum total surface area of 6 square inches for a compensable rating. As the medical evidence reflects that the Veteran's scars do not meet the criteria for a compensable rating, a compensable rating for scars residual to shrapnel fragment wounds to the right forearm, right thigh and right back is not warranted.

That, however, does not end the inquiry. Consideration may also be given to residuals of the shrapnel wounds other than residual scarring. In this case, the Veteran's lay statements, treatment records, and examinations have consistently referred to some loss of function in his right arm related to his wounds. 

The Veteran's service treatment records show a loss of sensation in his right arm at the time of the injury. In his May 1979 claim, the Veteran noted "numbness in right arm & shoulder."

A VA examiner in March 1999 noted "hyperesthesias of the right upper extremity laterally due to cutaneous nerve injury and he still has fragments felt through the deep muscle in the right upper extremity medial upper arm area and anterior forearm area." The March 1999 examiner also noted the Veteran's lay statement that he "cannot lift things." 

In August 2009, the Veteran's VA primary care physician found that his "residual numbness/paresthesia right thumb" was likely related to his wounds and that he "could have superficial radial nerve injury" due to "metallic fragments anterior to distal radius at base of thumb." 

In a statement accompanying the instant appeal in May 2012, the Veteran reported "numbness in [his] right arm and hand." He said that, due to this, he was "not able to do physical work with right arm or throw a baseball or football with [his] son while growing up." He said that his "thumb and arm on right side just goes numb."

The March 2014 examiner performed tests that indicated decreased sensation "on the right upper arm and medial forearm to hand and thumb - 3rd finger." The examiner also noted the Veteran's lay assertion that intermittent weakness and paresthesia in his right arm and hand cause him to occasionally drop things when his fingers go to sleep and limit his carrying capacity to 35 pounds. Based on the test results, as well as the Veteran's medical history and lay statements, the examiner opined "that there is a diagnosis of chronic radial nerve injury." She further opined that the Veteran's sensory motor neuropathy in the radial nerve was residual to his shrapnel wounds and that this neuropathy caused "[m]ild functional limitation." These facts support a finding that the Veteran has mild paralysis of the right arm radial nerve.

Although the Veteran is competent and credible to describe the symptomatology of his radial nerve injury, his lay statements do not provide any description of symptoms that would support a finding of "moderate" or "severe" paralysis. The Veteran's lay statements and the medical evidence of record document that the Veteran's symptomatology is intermittent and limited to occasional numbness and weakness. The Veteran's lay statement that he remains capable of carrying up to 35 pounds supports a finding that any weakness is mild. Overall, such findings reflect "mild" paralysis but not "moderate" or "severe." 

The medical and lay evidence of record therefore does not demonstrate manifestations consistent with "moderate" or "severe" paralysis of the radial nerve. At no time has any competent medical professional indicated that the loss of function due to the Veteran's radial nerve injury is "moderate" or "severe." There is therefore no basis for a finding that the Veteran's radial nerve paralysis is any greater than "mild." According to 38 C.F.R. § 4.124a, Diagnostic Code 8514, mild paralysis of the radial nerve in either arm warrants a 20 percent disability rating. 

The Board has additionally considered whether there are any other Diagnostic Codes which could apply to the Veteran's current disability on appeal. Physical examination has not shown, however, any other diagnoses or significant symptomatology residual to shrapnel wounds, such as damage to nerves other than the radial nerve. The Board therefore finds that there are no other potentially applicable Diagnostic Codes by which a higher rating or ratings can be assigned. 

Extraschedular Consideration

Since the rating criteria for scars and radial nerve paralysis reasonably describe the Veteran's disability level and symptomatology, the Veteran's disability picture is contemplated by the Rating Schedule, such that the assigned schedular evaluation is, therefore, adequate and no referral for extraschedular consideration is required. See 38 C.F.R. § 3.321; Thun v. Peake, 22 Vet. App. 111, 115-16 (2008). 

The evidence fails to show anything unique or unusual about the Veteran's scars or radial nerve paralysis that would render the schedular criteria inadequate. There are no additional symptoms due to his scars and radial nerve paralysis that are not addressed by the Rating Schedule, and to the extent that the Veteran's radial nerve paralysis interferes with his employability and activities of daily life, such interference is contemplated by the 20 percent schedular rating criteria. See 38 U.S.C.A. § 1155; 38 C.F.R. §§ 4.1, 4.10. 

Generally, the degrees of disability specified in the Rating Schedule are considered adequate to compensate for loss of working time from exacerbations or illnesses proportionate to the severity of the several grades of disability. 38 C.F.R. § 4.1; VAOPGCPREC 6-96; see also Bagwell v. Brown, 9 Vet. App. 337, 338 (1996). 

Finally, the Board notes that under Johnson v. McDonald, 2013-7104, 2014 WL 3562218 (Fed. Cir. Aug. 6, 2014), a Veteran may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture all the service-connected disabilities experienced. There is no showing that this holding is pertinent to the instant case, especially given the issue before the Board. Accordingly, this is not an exceptional circumstance in which extraschedular consideration may be required to compensate the Veteran for any additional disability that can be attributed only to the combined effect of multiple conditions.

Therefore, the threshold factor for extraschedular consideration under step one of Thun has not been met. The disability picture is contemplated by the rating schedules and the assigned schedular ratings are, therefore, adequate. Consequently, on this record, referral for extraschedular consideration is not required under 38 C.F.R. § 3.321(b)(1) for these disabilities. 

In sum, there is no basis for assignment of a compensable rating for the Veteran's scars or for assignment of a rating in excess of 20 percent for radial nerve paralysis. In reaching the conclusion above, the Board has considered the applicability of the benefit of the doubt doctrine but, because the preponderance of the evidence is against the assignment of compensability ratings any higher than those currently existing or assigned herein, that doctrine is not applicable. See 38 U.S.C.A. § 5107(b); Ortiz v. Principi, 274 F.3d 1361, 1364 (Fed. Cir. 2001); Gilbert v. Derwinski, 1 Vet. App. 49, 55-57 (1990).



 (CONTINUED ON NEXT PAGE)



ORDER

Entitlement to a compensable rating for scars residual to shrapnel wounds to the right forearm, right thigh, and right back is denied.

Entitlement to a separate 20 percent rating for paralysis of the radial nerve is granted, subject to the controlling regulations governing the payment of monetary benefits. 


____________________________________________
MICHAEL D. LYON 
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs