Citation Nr: 1554511 
Decision Date: 12/31/15 Archive Date: 01/07/16

DOCKET NO. 12-16 600A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Albuquerque, New Mexico


THE ISSUES

1. Entitlement to an initial evaluation in excess of 10 percent for gastroesophageal reflux disease (GERD) with esophagitis, prior to July 30, 2015.

2. Entitlement to an initial evaluation in excess of 30 percent for GERD with esophagitis, on and after July 30, 2015.

3. Entitlement to service connection for a hiatal hernia, to include as secondary to a service-connected lumbar spine disorder.


ATTORNEY FOR THE BOARD

B. Rideout, Associate Counsel





INTRODUCTION

The Veteran had active duty service from November 1970 to August 1971. This matter comes before the Board of Veterans' Appeals (Board) on appeal from a September 2011 rating decision from the Department of Veterans Affairs (VA) Regional Office (RO) in Albuquerque, New Mexico.

The Veteran's gastric claims were previously before the Board in May 2015. At that time, the Board remanded the Veteran's claim for an increased evaluation for GERD with esophagitis. However, the issue of service connection for a hiatal hernia was not addressed at that time - the Board stated that the claim for esophagitis/hiatal hernia had been granted in a February 2014 rating decision. The AOJ, however, previously adjudicated the issues of service connection for a hiatal hernia as separate from esophagitis, to include re-adjudication in a February 2014 supplemental statement of the case. Furthermore, the Veteran has continued to offer testimony in connection with his hiatal hernia claim as though it is a separate claim. Moreover, despite a general limitation of assigning separate evaluations for gastrointestinal conditions that manifest with the same symptoms, that is a question for evaluation, and not for service connection. See 38 C.F.R. §§ 4.14, 4.113 (2015). The Board thus finds that the hiatal hernia claim remains on appeal.

During the pendency of the appeal, in an August 2015 rating decision, the Appeals Management Center (AMC) increased the evaluation for the Veteran's service-connected GERD, with esophagitis, disability from 10 percent to 30 percent effective from July 30, 2015. However, when a veteran seeks an increased evaluation, it will generally be presumed that the maximum benefit allowed by law and regulation is sought, and it follows that such a claim remains in controversy where less than the maximum benefit available is awarded. AB v. Brown, 6 Vet. App. 35 (1993). Thus, the issue remains on appeal.

The Board finds that a claim for a total disability rating based on individual unemployability (TDIU) has not been raised. The Veteran has testified that his GERD disorder makes him uncomfortable, that he was not able to preach or sing as a result of the condition, and that his GERD symptoms disrupted his sleep, causing him to be tired during the day. However, the Veteran has not claimed that his GERD, with esophagitis, prevents him from maintaining meaningful employment, nor does the evidence of record support such a claim. The July 2015 VA examiner noted that the Veteran stopped working in 2010, due to multiple problems, including stress and back pain. As such, the cumulative evidence of record shows that the issue of TDIU is not reasonably raised in this matter. See Rice v. Shinseki, 22 Vet. App. 447, 453-54 (2009).

This appeal was processed using Virtual VA and the Veterans Benefits Management System paperless claims processing system. Accordingly, any future consideration of this Veteran's case should take into consideration the existence of this electronic record. 

The issues of entitlement to an increased evaluation for GERD with esophagitis prior to July 30, 2015, and entitlement to service connection for a hiatal hernia are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDING OF FACT

On and after July 30, 2015, the Veteran's GERD, with esophagitis, did not demonstrate symptoms beyond persistently recurrent epigastric distress with dysphagia, pyrosis, and regurgitation, accompanied by substernal or arm or shoulder pain, productive of considerable impairment of health.


CONCLUSION OF LAW

The criteria for an initial evaluation in excess of 30 percent for GERD with esophagitis, on and after July 30, 2015, have not been met or approximated. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107(b) (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.321, 4.114, Diagnostic Code 7399-7346 (2015).

REASONS AND BASES FOR FINDING AND CONCLUSION

Upon receipt of a substantially complete application for benefits, VA must notify the claimant of what information or evidence is needed in order to substantiate the claim and it must assist the claimant by making reasonable efforts to get the evidence needed. 38 U.S.C.A. §§ 5103(a), 5103A; 38 C.F.R. § 3.159(b); see Quartuccio v. Principi, 16 Vet. App. 183, 187 (2002). 

The notice required must be provided to the claimant before the initial unfavorable decision on a claim for VA benefits, and it must (1) inform the claimant about the information and evidence not of record that is necessary to substantiate the claim; (2) inform the claimant about the information and evidence that VA will seek to provide; (3) inform the claimant about the information and evidence the claimant is expected to provide. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b)(1); Pelegrini v. Principi, 18 Vet. App. 112, 120 (2004). 

Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his representative, if any, of any information, and any medical or lay evidence, that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); Quartuccio v. Principi, 16 Vet. App. 183 (2002). Proper notice from VA must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. This notice must be provided prior to an initial unfavorable decision on a claim by the agency of original jurisdiction (AOJ). Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004). 

Additionally, "[i]n cases where service connection has been granted and an initial disability rating and effective date have been assigned, the typical service-connection claim has been more than substantiated-it has been proven, thereby rendering section 5103(a) notice no longer required because the purpose that the notice is intended to serve has been fulfilled." Dingess/Hartman, 19 Vet. App. at 490; Dunlap v. Nicholson, 21 Vet. App. 112, 116-17 (2007) (noting that once an initial VA decision awarding service connection and assigning a disability evaluation and effective date has been made, section 5103(a) notice is no longer required). Where service connection has been granted, the claimant bears the burden of demonstrating prejudice from defective notice with respect to downstream elements such as effective dates or disability ratings. Goodwin v. Peake, 22 Vet. App. 128, 137 (2008). The Veteran has made no such assertions in connection with his claim for an initial increase evaluation for GERD with esophagitis, on and after July 30, 2015. Accordingly, VA's duty to notify has been satisfied. 

The duty to assist the Veteran has also been satisfied in this case. All service treatment records and identified and available post-service medical records pertinent to the years after service are in the claims file and were reviewed by both the RO and the Board in connection with the claims. 

In addition, the Veteran was afforded a VA examination in July 2015, during the relevant time period. When VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). The Board finds that the July 2015 VA examination in this case was adequate, as it was predicated on a review of the Veteran's medical history and a thorough examination that fully addressed the relevant rating criteria. 

The Board finds there has been substantial compliance with the May 2015 remand directives, with regard to the Veteran's claim for an increased evaluation for his GERD with esophagitis, on and after July 30, 2015. See Stegall v. West, 11 Vet. App. 268 (1998). Specifically, the Board finds that the July 2015 remand requested that the AOJ obtain another VA examination for the Veteran's gastric conditions. As above, the Veteran underwent an examination in July 2015, which fully addressed the relevant rating criteria.

Hence, no further notice or assistance to the Veteran is required to fulfill VA's duty to assist the Veteran in the development of the claim. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd 281 F.3d 1384 (Fed. Cir. 2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001); see also Quartuccio v. Principi, 16 Vet. App. 183 (2002).
Law and Analysis

Disability evaluations are determined by evaluating the extent to which a Veteran's service-connected disability adversely affects his ability to function under the ordinary conditions of daily life, including employment, by comparing his symptomatology with the criteria set for the in the Schedule for Rating Disabilities. 38 U.S.C.A. § 1155 ; 38 C.F.R. § 4.1. Separate diagnostic codes identify various disabilities and the criteria for specific ratings. 

If two disability evaluations are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that evaluation. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.1. After careful consideration of the evidence, any reasonable doubt remaining will be resolved in favor of the Veteran. 38 C.F.R. § 4.3. 

Where service connection has already been established and an increase in the disability rating is at issue, it is the present level of disability that is of primary concern. Francisco v. Brown, 7 Vet. App. 55, 58 (1994). Where VA's adjudication of the claim for increase is lengthy and factual findings show distinct time periods where the service-connected disability exhibits symptoms which would warrant different ratings, different or "staged" ratings may be assigned for such different periods of time. Fenderson, 12 Vet. App. at 126-27. The Board notes that the Veteran is appealing the initial assignment of a disability rating, however, as the August 2015 rating decision created a staged rating, the Board notes that the relevant time period for review of this appeal is on and after July 30, 2015.

The Veteran is currently assigned a 30 percent disability evaluation for his GERD with esophagitis, on and after July 30, 2015, pursuant to 38 C.F.R. § 4.114, Diagnostic Codes (DC) 7399-7346. The Veteran's disability is not specifically listed in the Rating Schedule, and this hyphenated diagnostic code including the "99" series indicates that the most analogous diagnosed code for the Veteran's disability is Diagnostic Code 7346, which applies to hiatal hernias. 38 C.F.R. 
§ 4.20. 

The Board notes that while the Veteran's GERD with esophagitis, claim was assigned an evaluation by analogy using the DC for hiatal hernias, the Veteran's claim for service connection for a hiatal hernia has not been granted and thus, was not a factor in this evaluating this claim. As above, the Veteran's hiatal hernia claim was adjudicated separately and is discussed in the remand portion of this decision. 

Under DC 7346, for hiatal hernia, a 30 percent disability rating is warranted for persistently recurrent epigastric distress with dysphagia, pyrosis and regurgitation accompanied by substernal or arm or shoulder pain, productive of considerable impairment of health. A 60 percent disability rating is warranted for symptoms of pain, vomiting, material weight loss and hematemesis or melena with moderate anemia; or other symptom combinations productive of severe impairment of health.

Having carefully considered the claim in light of the record and the applicable law, the Board is of the opinion that the preponderance of the evidence is against the claim and an evaluation in excess of 30 percent on and after July 30, 2015, is not warranted. The Veteran underwent a VA examination in July 2015. At that examination he reported that his GERD had become worse since his last VA examination. He reported a bile-like taste that caused him to cough and stated that his symptoms forced him to sleep in a reclining chair and monitor his diet. He also reported taking continuous medication for the disorder. The VA examiner noted that the Veteran was experiencing the following symptoms: infrequent episodes of epigastric distress, dysphagia, pyrosis, reflux, substernal pain and arm pain, sleep disturbance 4 or more times per year, lasting less than 1 day, nausea occurring 4 or more times per year, lasting less than 1 day, and melena with moderate anemia occurring 4 or more times per year, lasting less than 1 day. Esophageal stricture, spasm and/or diverticulum were not found. The examiner characterized the Veteran's symptoms as productive of considerable impairment of health. 

Review of the Veteran's claims file does not show any additional treatment for his GERD with esophagitis, during the relevant time period. The Board also notes that while the Veteran has submitted testimony in support of his claim, this testimony addresses symptoms occurring prior to July 30, 2015.

The Board finds that the Veteran's symptoms at his July 2015 VA examination show that his GERD with esophagitis, align more closely with a 30 percent evaluation under DC 7346, wherein the Veteran's symptoms of recurrent epigastric distress with dysphagia and reflux, accompanied by arm or shoulder pain and productive of considerable impairment of health are described. On and after July 30, 2015, the Veteran has not demonstrated symptoms of vomiting or material weight loss, as described in the criteria for a 60 percent evaluation. See also 38 C.F.R. § 4.112 (2015). Indeed, the July 2015 examiner noted that the Veteran had gained lost weight back and further found that the evidence of record did not show complaints of worsening GERD symptoms over the previous four years. Additionally, the July 2015 VA examiner found that the Veteran's symptoms caused considerable impairment of health, but not the severe impairment of health as indicated under the criteria for a 60 percent evaluation. As such, the Board finds that the evidence of record shows that the Veteran's symptoms on and after July 30, 2015, more closely align with the criteria for a 30 percent disability evaluation.

The Board has considered whether the Veteran is entitled to an increased evaluation under other potentially relevant DCs. See Schafrath v. Derwinski, 1 Vet. App. 589 (1991). The evidence does not show, nor has the Veteran reported, a disorder of the mouth, lips, tongue, liver, intestines, colon, or rectum. As such, DCs discussing such conditions are not for application. Esophagus stricture, spam and/or diverticulum were specifically not found at the Veteran's July 2015 VA examination. Therefore DCs 7203, 7204, and 7205 are also not for application. Furthermore, the evidence of record does not demonstrate any findings of ulcers. See 38 C.F.R. § 4.114, DCs 7305, 7306.

An increased evaluation by analogy to DC 7301 would be warranted in circumstances of x-ray evidence of a peritoneal obstruction, with frequent and prolonged episodes of severe colic distension, nausea or vomiting, following severe peritonitis, ruptured appendix, perforated ulcer, or operation with drainage. In this case, however, there is no such evidence. As such, an increase under DC 7301 is not warranted. There is also no indication that the Veteran has multiple small eroded or ulcerated areas and symptoms. Nor does he have severe hemorrhages or large ulcerated or eroded areas. Thus, the Veteran does not meet the criteria for an increased evaluation under Diagnostic Code 7307. DC 7308 (postgastrectomy syndrome) is also not for application in this case, as there is no evidence of record showing that the Veteran was experiencing circulatory symptoms or continuous postgastrectomy syndrome. 

Accordingly, an increased evaluation is not warranted on and after July 30, 2015. Based upon the guidance of the Court in Hart v. Mansfield, 21 Vet. App. 505 (2007), the Board has also considered whether staged ratings are appropriate. For the reasons indicated above, however, the Veteran's symptoms do not present with findings necessary to allow for any higher staged ratings as they have remained essentially the same throughout the relevant appeal period.
 
Extra-schedular Rating

The Board has considered the provisions of 38 C.F.R. § 3.321(b)(1). However, in this case, the Board finds that the record does not show that the Veteran's GERD, with esophagitis, on and after July 30, 2015, is so exceptional or unusual as to warrant the assignment of a higher rating on an extra-schedular basis. See 38 C.F.R. § 3.321(b)(1).

The threshold factor for extraschedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. See Thun v. Peake, 22 Vet. App. 111 (2008). In this regard, there must be a comparison between the level of severity and symptomatology of the claimant's service- connected disability with the established criteria found in the rating schedule for that disability. If the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule and the assigned schedular evaluation is therefore adequate, and no extraschedular referral is required. Id.; see also VAOGCPREC 6-96 (Aug. 16, 1996). Otherwise, if the schedular evaluation does not contemplate the claimant's level of disability and symptomatology and is found inadequate, VA must determine whether the claimant's exceptional disability picture exhibits other related factors, such as those provided by the extraschedular regulation (38 C.F.R. § 3.321(b)(1)) as "governing norms" (which include marked interference with employment and frequent periods of hospitalization).

The evidence in this case does not show such an exceptional disability picture that the available schedular evaluation for the service-connected disability is inadequate. A comparison between the level of severity and symptomatology of the Veteran's assigned rating with the established criteria found in the rating schedule shows that the rating criteria reasonably describe the Veteran's disability level and symptoms such as pain, epigastric distress, dysphagia, nausea, reflux symptoms, and considerable impairment of health. Based on the foregoing, the Board finds that the requirements for an extraschedular evaluation for the Veteran's service-connected GERD, with esophagitis, under the provisions of 38 C.F.R. § 3.321(b)(1) have not been met. Bagwell v. Brown, 9 Vet. App. 337 (1996); Thun v. Peake, 22 Vet. App. 111 (2008).


ORDER

An initial evaluation in excess of 30 percent for GERD with esophagitis, on and after July 30, 2015, is denied.


REMAND

The Board finds that the Veteran's claim for an initial increased evaluation prior to July 30, 2015, must be remanded for further development. First, while the Veteran was afforded a VA examination in July 2015, that examiner primarily addressed the manifestation of the Veteran's GERD, with esophagitis, at the time of the 2015 examination. The Veteran had alleged that he suffered from weight loss, nausea, hematemesis and melena during the time period prior to the July 2015 examination. He alleged that such symptoms were not considered at his August 2011 VA examination. The Board notes that the Veteran has been diagnosed with several gastric disorders, as well as other non-service connected disorders. As such, a VA medical opinion is required, which can evaluate the Veteran's reported symptoms and opine as to whether they are related to the Veteran's GERD, with esophagitis, and the severity of those symptoms. See Colvin v. Derwinski, 1 Vet. App. 171 (1991) (providing that the Board cannot substitute its own medical judgment for that of medical professionals). Additionally, the Veteran's GERD, with esophagitis, claim was initially rated by analogy under DC 7301 (adhesions of the peritoneum), presumably due to the May 2011 motility study results available at that time. Later, the Veteran's disorder was rated by analogy to DC 7346 (hiatal hernia). A recommendation as to which disorder the Veteran's symptoms are most analogous to prior to July 30, 2015, should also be obtained. 

In regard to the Veteran's hiatal hernia claim, the Board notes that the Veteran underwent a VA examination in August 2011. While that examiner provided a negative nexus opinion, the Board finds that the opinion did not include an opinion as to whether the Veteran's hiatal hernia disorder was aggravated by his other service-connected disorders. As such, a remand is necessary in this case for another VA examination.

Accordingly, the case is REMANDED for the following action:

1. Contact the appropriate VA Medical Center and obtain and associate with the claims file all outstanding records of treatment. If any requested records are not available, or the search for any such records otherwise yields negative results, that fact must clearly be documented in the claims file. Efforts to obtain these records must continue until it is determined that they do not exist or that further attempts to obtain them would be futile. The non-existence or unavailability of such records must be verified and this should be documented for the record. Required notice must be provided to the Veteran and his or her representative. 

2. Contact the Veteran and afford him the opportunity to identify by name, address and dates of treatment or examination any relevant medical records. Subsequently, and after securing the proper authorizations where necessary, make arrangements to obtain all the records of treatment or examination from all the sources listed by the Veteran which are not already on file, to include all updated VA medical records. All information obtained must be made part of the paper or electronic file. All attempts to secure this evidence must be documented in the claims file. If, after making reasonable efforts, the records cannot be obtained, notify the Veteran and his representative and (a) identify the specific records that cannot be obtained; (b) briefly explain the efforts made to obtain those records; and (c) describe any further action to be taken with respect to the claim. The Veteran must then be given an opportunity to respond.

3. After the above development has been completed and all records associated with the claims file, the Veteran must be afforded a VA medical opinion to determine the severity and manifestation of the Veteran's GERD with esophagitis, for the period of March 9, 2011 to July 29, 2015. Only if deemed necessary by the VA examiner is an actual examination necessary. The examiner must elicit a full history of symptoms from the Veteran and correlate this history with the medical evidence of record. 

The examiner is requested to review all pertinent records associated with the claims file, including the Veteran's service treatment records, post-service medical records, and assertions. An explanation for all opinions expressed must be provided. 

The examiner should report all signs and symptoms necessary for rating the Veteran's GERD with esophagitis, under the appropriate analogous rating criteria, prior to July 30, 2015. In particular, the examiner should provide an opinion as to whether the Veteran's disorder, prior to July 30, 2015, more closely aligns with rating criteria for adhesions of the peritoneum, a hiatal hernia, or another diagnostic code. 

The examiner must indicate the presence of pain, vomiting, weight loss, hematemesis, melena, epigastric distress, dysphagia, pyrosis and regurgitation, arm/shoulder pain, nausea, diarrhea, colic pain, delayed motility, and/or peritoneal obstruction for the period of March 9, 2011 to July 29, 2015. The examiner should also provide an opinion as to whether the Veteran's symptoms were mild, moderate, moderately severe, or severe during that time period; as well as a characterization of the Veteran's symptoms as causing a considerable impairment of health or a severe impairment of health. 

4. After the above development has been completed and all records associated with the claims file, the Veteran must be afforded a VA examination to determine the nature and etiology of a hiatal hernia. Any and all studies, tests, and evaluations deemed necessary by the examiner should be performed. The examiner is requested to review all pertinent records associated with the claims file, including the Veteran's service treatment records, post-service medical records, and assertions. An explanation for all opinions expressed must be provided. 

The examiner must opine as to whether it is at least as likely as not that hiatal hernia is causally or etiologically related to the Veteran's military service. The examiner must also provide an opinion regarding whether a hiatal hernia is caused or aggravated by the Veteran's service-connected disorders together, which include any medications taken for his lumbar spine disorder and/or the Veteran's service-connected GERD with esophagitis. 

5. Notify the Veteran that it is his responsibility to report for any scheduled examination and to cooperate in the development of the claims, and that the consequences for failure to report for a VA examination without good cause may include denial of the claims. 38 C.F.R. §§ 3.158, 3.655 (2015). In the event that the Veteran does not report for any scheduled examination, documentation must be obtained which shows that notice scheduling the examination was sent to the last known address. It must also be indicated whether any notice that was sent was returned as undeliverable.

6. Review each examination report to ensure that it is in complete compliance with the directives of this remand. If a report is deficient in any manner, the AOJ must implement corrective procedures. Stegall v. West, 11 Vet. App. 268, 271 (1998). 

7. After completing the above actions, and any other development as may be indicated by any response received as a consequence of the actions taken in the preceding paragraphs, the Veteran's claims should be readjudicated based on the entirety of the evidence. If the claims remain denied, the Veteran and his representative should be issued a supplemental statement of the case, and an appropriate period of time should be allowed for response.

The Veteran has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
K. MILLIKAN
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs