http://www.va.gov/vetapp16/Files4/1630417.txt

Citation Nr: 1630417 
Decision Date: 07/29/16 Archive Date: 08/04/16

DOCKET NO. 14-15 832 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Indianapolis, Indiana

THE ISSUES

1. Entitlement to service connection for a dental disability, to include temporomandibular joint disorder (TMJ), for VA compensation purposes.

2. Entitlement to service connection for degenerative bone disease, bilateral hips. 

3. Entitlement to a compensable initial disability rating for bilateral hearing loss.

4. Entitlement to a compensable initial disability rating for migraine headaches.

REPRESENTATION

Appellant represented by: Disabled American Veterans

WITNESS AT HEARING ON APPEAL

The Veteran

ATTORNEY FOR THE BOARD

D.S. Lee, Counsel

INTRODUCTION

The Veteran had active duty service from May 1964 through May 1968.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a January 2011 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Indianapolis, Indiana.

The Veteran's testimony was received during a January 2016 video conference hearing. A transcript of that testimony is associated with the claims file.

The Veteran's hearing testimony suggests the possibility that the Veteran's claimed dental disability may include TMJ. Given the Veteran's testimony, the Board has expanded the Veteran's dental disability claim to include consideration of service connection for TMJ. See Clemons v. Shinseki, 23 Vet. App. 1 (2009).

The issue of the Veteran's entitlement to service connection for a dental disability, to include TMJ, for VA compensation purposes is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).

FINDINGS OF FACT

1. Prior to June 11, 2010, the Veteran's service-connected headaches were manifested by the occurrence of cluster headaches that were prostrating and lasted for periods of hours; however, occurred less than once every two months.

2. From June 11, 2010, the Veteran's service-connected headaches were manifested by the occurrence of daily mild headaches and more severe cluster headaches that lasted for periods of two to three months, consisted of prostrating headaches that occurred more than once per month with three or four attacks per day during such clusters, and were accompanied by intolerance to light and sound.

3. On January 14, 2016, the Veteran's representative stated on the record that the Veteran wished to withdraw his appeal of the RO's January 2011 denial of his claims for service connection for degenerative bone disease, bilateral hips and for a compensable initial disability rating for bilateral hearing loss.

CONCLUSIONS OF LAW

1. The criteria for a compensable initial disability rating for migraine headaches are neither met nor approximated prior to June 11, 2010. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2015); 38 C.F.R. §§ 3.159, 4.1, 4.3, 4.7, 4.124a, Diagnostic Code 8100 (2015).

2. The criteria for a 50 percent disability rating, and no more, for migraine headaches are met from June 11, 2010. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2015); 38 C.F.R. §§ 3.159, 4.1, 4.3, 4.7, 4.124a, Diagnostic Code 8100 (2015).

3. The criteria for withdrawal of the Veteran's appeals concerning the issue of entitlement to service connection for degenerative bone disease, bilateral hips are met. 38 U.S.C.A. § 7105(b)(2), (d)(5) (West 2014); 38 C.F.R. § 20.204 (2015).

4. The criteria for withdrawal of the Veteran's appeals concerning the issue of entitlement to a compensable initial disability rating for bilateral hearing loss are met. 38 U.S.C.A. § 7105(b)(2), (d)(5) (West 2014); 38 C.F.R. § 20.204 (2015).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duties to Notify and Assist

VA's duties to notify and assist claimants in substantiating a claim for VA benefits are found at 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014) and 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2015).

In this case, a pre-rating January 2010 letter notified the Veteran of the information and evidence needed to substantiate his original claim for service connection for cluster migraines. The notice provided in the January 2010 letter would apply to the "downstream" issue of entitlement to a higher initial disability rating for migraines. Dunlap v. Nicholson, 21 Vet. App. 112, 119 (2007); Dingess v. Nicholson, 19 Vet. App. 473, 491. VCAA notice in this case was legally sufficient; hence, VA's duty to notify has been satisfied. 

VA has also fulfilled its duty to assist in obtaining identified and available evidence needed to substantiate the Veteran's claim. The Veteran's claims submissions, lay statements, service treatment records, VA treatment records, and social security records have been associated with the record. The Veteran was afforded a VA examination of his headaches in June 2010. That examination, considered along with the other evidence of record, is fully adequate for the purposes of determining the symptoms, severity, and impairment associated with the Veteran's headaches. See Barr v. Nicholson, 21 Vet. App. 303 (2007).

Overall, there is no evidence of any VA error in notifying or assisting the Veteran that reasonably affects the fairness of this adjudication.

II. Disability Ratings for Migraines

Service connection for migraine headaches was granted to the Veteran in a January 2011 rating decision, effective September 23, 2009, with a non-compensable initial disability rating assigned pursuant to 38 C.F.R. § 4.124a, Diagnostic Code (DC) 8100. The Veteran challenges the assigned initial disability rating.

Disability ratings are determined by applying the criteria set forth in VA's Schedule for Rating Disabilities. Ratings are based on the average impairment of earning capacity. Individual disabilities are assigned separate diagnostic codes. See 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1.

Where there is a question as to which of two ratings applies, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7.

In order to evaluate the level of disability and any changes in severity, it is necessary to consider the complete medical history of the veteran's disability. Schafrath v. Derwinski, 1 Vet. App. 589, 594 (1991). In instances where the disability rating being appealed is the initial disability rating that has been assigned with a grant of service connection, the entire appeal period is for consideration, and separate ratings may be assigned for separate periods of time based on facts found, a practice known as "staged ratings." See Fenderson v. West, 12 Vet. App. 119 (1999).

When a reasonable doubt arises regarding the degree of disability, such doubt will be resolved in the veteran's favor. 38 C.F.R. §§ 3.102, 4.3. Once the evidence is assembled, the Board is responsible for determining whether the preponderance of the evidence is against the claim. If so, the claim is denied; if the evidence is in support of the claim or is in equal balance, the claim is allowed. 38 U.S.C.A. § 5107; Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990).

Under DC 8100, migraine headaches with less frequent attacks are assigned a non-compensable disability rating. Where the evidence shows that the migraine headaches occur with characteristic prostrating attacks averaging one in two months over the last several months, a 10 percent disability rating is assigned. Where migraine headaches occur with characteristic prostrating attacks occurring on an average of once a month over the last several months, a 30 percent disability rating is appropriate. Migraine headaches with very frequent, completely prostrating and prolonged attacks that are productive of severe economic inadaptability warrant a maximum schedular 50 percent disability rating. 38 C.F.R. § 4.124a, Diagnostic Code 8100 (2015).

The rating criteria do not define the term "prostrating." According to WEBSTER'S NEW WORLD DICTIONARY OF AMERICAN ENGLISH, THIRD COLLEGE EDITION (1986), p. 1080, "prostration" is defined as "utter physical exhaustion or helplessness." Essentially the same definition is found in DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1367 (28th Ed. 1994), which defines "prostration" as "extreme exhaustion or powerlessness."

Here, the evidence includes a June 2010 VA examination, during which the Veteran reported that he had not been having any recent issues with migraines until two weeks ago. According to the Veteran, he was having headaches less than once every two months at that time. The Veteran reported that he was not employed at that time. The examiner did not note any functional or occupational impairment that was associated with the Veteran's headaches.

VA treatment records show that the Veteran was seen in the VA neurology headache clinic in June 2011. At that time, the Veteran reported that his headaches had been increasing in frequency and stated that mild headaches were present daily. He also described the occurrence of more severe cluster headaches that were "sharp" and "jabbing" in nature and which were accompanied by blurred vision and sensitivity to noise and light. The Veteran stated that these cluster type headaches lasted for three to four months at a time and that they had been increasing in frequency over the previous several months.

Subsequent records for VA treatment through January 2016 note ongoing headaches and reflect that the Veteran was being treated for his headaches with oxygen and Verapamil. Those records, however, do not reflect regular clinical treatment for headaches and do not contain information pertaining to the frequency and character of the Veteran's headache attacks. 

In his January 2016 video conference hearing, the Veteran testified that he reported during the 2010 VA examination that he reported that most of his headaches were prostrating at that time, occurred as often as three or four times per day, and that attacks of that frequency could be ongoing for periods of two or three months. To that end, he appears to suggest that his reported history was either misunderstood or transcribed incorrectly by the examiner. In regard to his current symptoms, he stated that he was experiencing ongoing prostrating headaches that caused him to lie down in a dark area. In describing the frequency of the current headaches, he testified that he had eight to 12 prostrating attacks over the previous 30 days and that he was receiving 15 Imitrex injections per month to treat his prostrating headaches.

There is no evidence in this case that the Veteran's headaches prostrating in severity or that they occurred with such frequency as to warrant a compensable disability rating under DC 8100 prior to the June 2010 VA examination. As noted, the Veteran reported expressly during that examination that he had not been having recent problems with his headaches until two weeks before the examination. Indeed, the treatment records in the claims file do not indicate any complaints or treatment relating to the Veteran's headaches at any time during the appeal period before the June 2010 VA examination. Under the circumstances, the Board concludes that the criteria for a compensable disability rating for the Veteran's migraine headaches are not met prior to June 11, 2010, the date of the June 2010 VA examination.

The Board does find, however, that the criteria for a 50 percent disability rating under DC 8100 are met for the period from June 11, 2010. In that regard, the Board observes that the June 2010 VA examination notes simply that the Veteran's headaches were occurring at that time less than once every two months. Although that finding appears to be supported by the Veteran's own statement that he had not had any problems with headaches until two weeks prior, the Board observes that the examiner's report conspicuously does not provide any discussion or insight as to the quality and frequency of the Veteran's headaches that had been occurring over the previous two weeks. The Veteran does testify credibly, however, that he was experiencing three or four headache attacks per day at the time of the June 2010 VA examination, and, that most headache attacks were prostrating. He testified further that he has experienced ongoing and frequent prostrating headaches since that time. Indeed, he reports in his testimony that he had experienced eight to 12 prostrating attacks over the 30 days preceding the hearing. Somewhat consistent with the Veteran's testimony, the VA treatment records reflect ongoing notations of cluster headaches and that the Veteran has been treated for his headaches with Verapamil and oxygen. Given the ongoing frequency of the Veteran's headaches since the June 2010 VA examination and the prostrating nature of the headache attacks, the Board finds that the Veteran is entitled to a 50 percent disability rating for migraine headaches from June 11, 2010.

The Board has also considered application of the provisions under 38 C.F.R. § 3.321(b)(1), which govern the assignment of extra-schedular disability ratings. In this case, however, the evidence does not show that the disability arising out of the Veteran's migraine headaches is so exceptional or unusual as to warrant the assignment of a higher rating on an extra-schedular basis. See 38 C.F.R. § 3.321(b)(1) (2015).

In Thun v. Peake, 22 Vet App 111 (2008), the United States Court of Appeals for Veterans Claims (Court) identified a three-step inquiry for determining whether an extra-schedular disability rating is warranted. First, the Board must determine whether the evidence presents such a disability picture that is so exceptional that the available schedular disability ratings for that service-connected disability are inadequate. Second, if the schedular disability rating does not contemplate the Veteran's level of disability and symptomatology and is found inadequate, the Board must determine whether the Veteran's disability picture exhibits other related factors such as those provided by the regulation as "governing norms." Third, if the rating schedule is inadequate to evaluate a veteran's disability picture and that picture has attendant thereto related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation Service to determine whether, in order to accord justice, the Veteran's disability picture requires the assignment of an extra-schedular rating.

In applying the first prong under Thun, the Board finds that the evidence in this case simply does not show that the disability picture associated with the Veteran's headaches is so exceptional that the contemplated schedular ratings are inadequate. In that regard, there is no indication in the record that the Veteran's disabilities have necessitated frequent in-patient treatment or surgery, nor is there evidence that the residuals have interfered with the Veteran's ability to perform ordinary activities or his occupational duties beyond that already contemplated by the assigned disability ratings. As discussed above, higher disability ratings are available for the period before June 11, 2010; however, the Veteran's headaches were not productive of the symptoms, manifestations, or functional loss required for higher disability ratings under any of the applicable rating criteria. To the extent that this decision provides a 50 percent disability rating from June 11, 2010, the newly assigned rating for that period is the maximum schedular disability rating under DC 8100 and the Board sees no other criteria that are applicable to the Veteran's disability. By virtue of the same, it cannot be said that the available schedular ratings for the Veteran's disability is inadequate. Based on the foregoing, the Board finds that the requirements for consideration of an extra-schedular disability rating for the Veteran's migraine headaches are not met. Thun, 22 Vet. App. 111; Bagwell v. Brown, 9 Vet. App. 337 (1996); Shipwash v. Brown, 8 Vet. App. 218 (1995).

The Board has also considered whether further "staged" disability ratings, beyond those already contemplated, are warranted for the Veteran's migraine headaches. In that regard, the record does not contain any evidence that indicates a material change in the Veteran's symptoms beyond that already recognized. As such, there is no basis for considering staged disability ratings in relation to the Veteran's migraine headaches.

In summary, the Veteran is not entitled to a compensable initial disability rating for migraine headaches prior to June 11, 2010; however, is entitled to a 50 percent disability rating for that disability from June 11, 2010. To that extent, this appeal is granted. 38 C.F.R. §§ 4.3, 4.7.

III. Withdrawal of Issues on Appeal

The Board may dismiss any appeal which fails to allege specific error of fact or law in the determination being appealed. 38 U.S.C.A. § 7105 (West 2014). An appeal may be withdrawn as to any or all issues involved in the appeal at any time before the Board promulgates a decision. 38 C.F.R. § 20.204 (2015). Withdrawal may be made by the appellant or by his or her authorized representative. 38 C.F.R. § 20.204. In the present case, the Veteran's representative stated on the record during the Veteran's January 2016 Board hearing that the Veteran wished to withdraw his appeals concerning the issues of entitlement to service connection for degenerative bone disease, bilateral hips and entitlement to a compensable initial disability rating for bilateral hearing loss. Hence, there remain no allegations of errors of fact or law for appellate consideration concerning those issues. Accordingly, the Board does not have jurisdiction to review those issues and they are dismissed.

ORDER

A compensable initial disability rating for migraine headaches prior to June 11, 2010 is denied.

A 50 percent disability rating for migraine headaches is granted from June 11, 2010, subject to the laws and regulations governing the payment of monetary VA benefits.

The appeal as to the issue of the Veteran's entitlement to service connection for degenerative bone disease, bilateral hips, is dismissed.

The appeal as to the issue of the Veteran's entitlement to a compensable initial disability rating for bilateral hearing loss is dismissed.

REMAND

In relation to the issue of the Veteran's entitlement to service connection for a dental disability, to include TMJ, the Veteran has asserted and testified that he sustained dental injuries during boot camp after he was struck on the mouth by a rifle butt. Specifically, he testified during his Board hearing that he sustained damage to the front teeth on the top row and that he has required multiple root canals and fillings and that ultimately his teeth were removed and replaced by dentures. Somewhat consistent with the Veteran's assertions, service treatment records show that a dental examination performed during his enlistment in May 1964 revealed no abnormalities in his mouth and teeth. Subsequent dental treatment records from later that month through July 1964, however, indicate findings and treatment of abnormalities on teeth # 3, 6, 7, 8, 9, and 10.

During his hearing, the Veteran testified that he has received dental treatment primarily from private dentists, including two unnamed dentists whose practices were located in Muncie, Indiana. Consistent with that testimony, records for VA treatment received by the Veteran from 2001 through January 2016 indicate only sparse VA dental treatment (i.e., records of a dental scaling performed in January 2007). VA should contact the Veteran at this time to ascertain the names and locations of the Veteran's private dental providers and dates of treatment corresponding to each private dental provider. Thereafter, VA should make efforts to obtain the records for all dental treatment identified by the Veteran. 38 C.F.R. § 3.159(c)(1).

After the records for identified private dental treatment have been obtained, the Veteran should be arranged to undergo a VA dental examination to determine the nature of the Veteran's current dental and oral disorders, and, whether those disorders were sustained during service or resulted from an injury or event that occurred during service. 38 C.F.R. § 3.159(c)(4).

Accordingly, the case is REMANDED for the following action:

1. A letter should be sent to the Veteran explaining, in terms of 38 U.S.C.A. §§ 5103 and 5103A, the need for additional evidence regarding his claim for service connection for a dental disability, to include TMJ, for VA compensation purposes. The letter must inform the Veteran about the information and evidence that is necessary to substantiate his claims, and also, must provide notification of both the type of evidence that VA will seek to obtain and the type of evidence that is expected to be furnished by the Veteran.

The letter must also notify the Veteran that VA is undertaking efforts to obtain records for any private dental treatment received by him and to arrange a VA dental and oral examination. The Veteran should be advised that it is his responsibility to report for any scheduled VA examinations and to cooperate with the development of his claim; failure to report without good cause may result in denial of his claims.

The Veteran should also be provided a VA 21-4142 release form, and be requested to identify on the release the name(s) and address(es) for all private dental treatment providers who have treated him since his active duty service, to include the dental providers located in Muncie, Indiana which he mentioned during his Board hearing testimony.

2. Obtain the records for any dental treatment identified by the Veteran. Records obtained as a result of such efforts should be associated with the claims file. If such efforts yield negative results, a notation to that effect should be inserted in the file. The Veteran and his representative are to be notified of any unsuccessful efforts in order to allow the Veteran the opportunity to obtain and submit those records for VA review.

3. After the foregoing development has been performed to the extent possible, the Veteran should be afforded a VA examination to determine the nature and etiology of current dental and oral disorders, including TMJ. The Veteran's claims file should be made available to the examiner prior to the examination, and the examiner must review the entire claims file in conjunction with the examination. For purposes of this examination, the examiner should assume that the Veteran was struck on the mouth by a rifle butt.

A full examination, to include an interview of the Veteran and any tests and studies deemed necessary by the examiner, should be conducted. The examiner should provide the following findings and opinions:

 (a) does the Veteran have any current dental and/or oral disorders? If so, what are there diagnoses?

 (b) does the Veteran have TMJ?

 (c) for each diagnosed dental and/or oral disorder, do you believe that it is at least as likely as not (at least a 50 percent probability) that the disorder was sustained during service or resulted from an injury or event that occurred during service?

 (d) does the Veteran have tooth loss? If so, do you believe that the Veteran's tooth loss was caused by loss of substance of the maxilla or mandible; or, a separate disease such as osteomyelitis?

In rendering the requested diagnoses and opinions, the examiner should consider all other relevant evidence, to include the Veteran's lay assertions, hearing testimony, in-service dental treatment records, and post-service dental treatment records. If the examiner is unable to provide any of the opinions requested above without resort to speculation, he or she should explain the reasons for this inability and comment on whether any further tests, evidence or information would be useful in rendering an opinion. The examiner's opinions and rationale should be expressed in a typewritten and legible report.

4. After completion of the above development, the issue of the Veteran's entitlement to service connection for a dental disability, to include TMJ, for VA compensation purposes, should be readjudicated. If the determination remains adverse to the Veteran, he and his representative should be furnished with a supplemental SOC and be given an opportunity to respond.

The Veteran has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate 

action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).

______________________________________________
MICHAEL LANE
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs