Citation Nr: 1722246 
Decision Date: 06/15/17 Archive Date: 06/29/17

DOCKET NO. 10-13 832A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Winston-Salem, North Carolina


THE ISSUE

Entitlement to an initial compensable evaluation for hypertension.


REPRESENTATION

Veteran represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

P. Yoffe, Associate Counsel


INTRODUCTION

The Veteran had active service from July 1969 to January 1972 and August 1982 to March 1983. The Veteran had additional service in the U.S. Army Reserves. 

This matter comes before the Board of Veterans' Appeals (Board) from a June 2008 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Winston-Salem, North Carolina.

In April 2011, the Veteran testified at a hearing before the undersigned via video. A transcript of the proceeding is of record. 

This case was before the Board in January 2012 and August 2014 and was remanded for further development. In returned to the Board in May 2016 for appellate review.

In a May 2016 decision, the Board denied entitlement to an initial compensable evaluation for hypertension. In February 2017, after the parties filed a Joint Motion for Partial Remand, the United States Court of Appeals of Veterans Claims (CAVC or Court) issued an Order partially vacating the May 2016 decision and remanded this matter to the Board. The Board's May 2016 decision also denied a higher rating for degenerative arthritis of the lumbar spine - which was not vacated - and a grant of sciatica of the right lower extremity. Neither is before the Board currently. The bases for the partial vacation of the May 2016 Board decision are discussed below.


FINDING OF FACT

Throughout the rating period, the Veteran's hypertension has required medication for control since January 2009; and has been manifested by diastolic blood pressure of predominantly below 100 and by systolic pressure predominantly below 160.


CONCLUSION OF LAW

The criteria for an initial compensable rating for hypertension have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.321, 4.1, 4.3, 4.7, 4.104, Diagnostic Code 7101 (2016).


REASONS AND BASES FOR FINDING AND CONCLUSION

Duties to Notify and Assist

VA has met all of the duty to notify and duty to assist provisions under the Veterans Claims Assistance Act of 2000 (VCAA). See 38 U.S.C.A. §§ 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.159, 3.326 (2016). 

Because service connection has been granted and an initial disability rating and effective date have been assigned for the disability on appeal, the purpose for serving notice has been fulfilled and further VCAA notice is unnecessary. Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). 

VA also must make reasonable efforts to help a claimant obtain evidence necessary to substantiate the claim. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159(c). VA will help a claimant obtain records relevant to the claim whether or not the records are in Federal custody, and VA will provide a medical examination and opinion when necessary to make a decision on the claim. 38 C.F.R. § 3.159(c)(4).

Service treatment records have been associated with the claims file. All identified and available post-service treatment records have been secured. The Veteran has been medically evaluated and a medical opinion has been sought in conjunction with his claim. The duty to assist has been fulfilled.

For the above reasons, the Board finds the duties to notify and assist have been met, all due process concerns have been satisfied, and the appeal may be considered on the merits at this time.


Rating Principles

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities (Rating Schedule), found in 38 C.F.R., Part 4. The ratings are intended to compensate impairment in earning capacity due to a service-connected disease or injury. 38 U.S.C.A § 1155; 38 C.F.R. § 4.1. 

If the evidence for and against a claim is an equipoise, the claim will be granted. A claim will be denied only if the preponderance of the evidence is against the claim. See 38 U.S.C.A § 5107; 38 C.F.R. § 3.102; Gilbert v. Derwinksi, 1 Vet. App. 49, 56 (1990). Any reasonable doubt regarding the degree of disability is resolved in favor of the Veteran. 38 C.F.R. § 4.3. Where there is question as to which of the two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. In every instance where the rating schedule does not provide a zero percent evaluation for a diagnostic code, a zero percent evaluation shall be assigned when the requirements for a compensable evaluation are not met. 38 C.F.R. § 4.31.

Staged ratings, however, are appropriate when the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. See Hart v. Mansfield, 21 Vet. App. 505 (2007); see also Fenderson v. West, 12 Vet. App. 119 (1999). Here, the disability has not materially changed and a uniform evaluation is warranted.

The determination of whether an increased evaluation is warranted is based on review of the entire evidence of record and the application of all pertinent regulations. See Schafrath v. Derwinski, 1 Vet. App. 589 (1991).

The Veteran's hypertension is rated as noncompensable percent disabling under Diagnostic Code 7101. 

Pursuant to Diagnostic Code 7101, a 10 percent rating is assigned for essential hypertension when diastolic pressure is predominantly 100 or more, or; systolic pressure is predominantly 160 or more, or; as a minimum evaluation for an individual with a history of diastolic pressure predominantly 100 or more who requires continuous medication for control. A 20 percent rating is assigned for diastolic pressure that is predominantly 110 or more, or; systolic pressure that is predominantly 200 or more. A 40 percent rating is assigned for diastolic pressure that is predominantly 120 or more. A 60 percent rating is assigned where diastolic pressure is predominantly 130 or more. 38 C.F.R. § 4.104, Diagnostic Code 7101.

Note (1) following Diagnostic Code 7101 provides that the term "hypertension" means the diastolic blood pressure is predominantly 90 millimeters or greater, and isolated systolic hypertension means that the systolic blood pressure is predominantly 160 millimeters or greater with a diastolic blood pressure of less than 90 millimeters. Note (2) provides that hypertension due to aortic insufficiency or hyperthyroidism, which is usually the isolated systolic type, is to be evaluated as part of the condition causing it, rather than by a separate evaluation. Note (3) provides that hypertension is to be evaluated separately from hypertensive heart disease and other types of heart disease. 38 C.F.R. § 4.104, Diagnostic Code 7101, Notes.

The February 2017 Order identified two issues. First, "[t]he Board did not state whether [the Veteran's diastolic reading ranging from] 54 to 105 was for the time frame prior to the time that Appellant began taking medication in 2009, after 2009, or for both of those time periods." Second, the Board did not discuss treatment records from February 2006, containing diastolic blood pressure readings ranging from 95 to 116, including seven readings higher than 100 for diastolic pressure. Consistent with this Order, these two issues are discussed below.

The Veteran has been taking medication for the control of his blood pressure since around 2009. Specifically, the Veteran started taking Benicar, which first appears in the medical evidence of record in January 2009, when blood pressure prescription was first listed. A January 2009 private medical note stated that the Veteran was provided a sample of Benicar and Benicar is listed after the date as a regular prescription. A prior January 2008 examination only listed a low salt diet as treatment and a May 2008 private medical note did not list Benicar under the pertinent section of the form.

The Veteran submitted his claim for high blood pressure in October 2007. He did not identify a disability start date, stating instead to consult the Veteran's service medical records. In an April 2007 medical history given by the Veteran shortly before he left the U.S. Army Reserves, the Veteran stated he had been treated for high blood pressure starting in February 2006. 

The first readings for the Veteran's blood pressure starting in February 2006 were 139/96, 149/116, and 152/102. There was an additional note of a blood pressure reading from the same day of 139/96, this could be a duplicate notation. There were additional readings in later on in February 2006 of 137/95, 139/100, 157/100, 154/98, 160/102, 160/108, and 166/105. Further blood pressure readings from 2006 were 119/90 (March), 139/92 (August) and 138/94 (October).

Blood pressure readings in May 2007 were 136/92, 139/93, and possibly 139/94 (one notation may be a duplicate of a prior reading or a separate reading with an unclear numeral, either a 3 or a 4). In November 2007, the Veteran's blood pressure reading was 131/86.

In a January 2008 VA contractor examination, the Veteran reported having headaches due to high blood pressure. The Veteran also reported a diagnosis for hypertension for three years and has been treated with a low sodium diet. The examiner noted blood pressure readings for three consecutive days. On the day of the examination, blood pressure readings were: 140/90, 140/90 and 142/96. On the following day, his blood pressure readings were: 140/90, 120/90 and 130/90. On the third day, blood pressure readings were: 120/80, 140/90 and 130/90. Upon examination, there were no related heart disabilities. He was diagnosed with borderline hypertension. Subjective factors were headaches and objective factors were mild elevation of blood pressure on multiple checks. There was no finding of hypertensive heart disease.

In May 2008, the Veteran had a blood pressure reading of 148/54.

In 2009, the Veteran had a blood pressure reading of 130/90 in January, 137/83 in February, 132/85 in May, and 128/92 in August.

During the April 2011 hearing, he testified that he took medication for his hypertension once a day that was prescribed by his private physician. His self-reported blood pressure readings reported during the hearing were normally around 128 in the morning (lowest) with 130s being average for systolic and low to mid 90s being average for diastolic. 

There are several blood pressure readings in 2011. In July 2011, blood pressure was 100/74; in September 2011, blood pressure was 116/78; and in December 2011, blood pressure was 104/68

The Veteran was afforded a VA examination in March 2012. He reported that he was taking Benicar for control of his blood pressure. The examiner found that the Veteran did not have a history of diastolic blood pressure elevation predominantly 100 or more. Blood pressure readings taken at the time of the examination were: 139/101, 136/99 and 135/96. 

For the period prior to January 2009, when the Veteran was first noted to have been prescribed medication for his blood pressure, the diastolic blood pressure readings ranged from 54 (May 2008) to 116 (February 2006). While the Veteran had multiple diastolic readings at or over 100 in February 2006, the Veteran's diastolic blood pressure from March 2006 to January 2009 were between 54 (May 2008) and 96 (January 2008), including in a VA contractor examination in January 2008. Even during February 2006, there were three reading for diastolic pressure under 100. Therefore, for this period, the Veteran's diastolic blood pressure was predominately under 100. The Veteran's systolic readings during this period twice exceeded 160 (both in February 2006), but was predominately under 160.

For the period after January 2009, when the Veteran was first noted to have been prescribed medication, the Veteran's diastolic blood pressure had one reading of 101 (in the March 2012 VA examination), but predominately was below 100. No systolic blood pressure reading surpassed 160. The Veteran, in his Board hearing, conformed that his blood pressure at that time was below 100 for diastolic and 160 for systolic. 

In this case, the Veteran takes continuous medication for his hypertension, but the evidence does not show that he has predominantly had systolic readings of 160 or more or diastolic readings of 100 or more. 

As such, the criteria for a higher rating for the Veteran's hypertension have not been met. 

The Board also considered the applicability of the benefit of the doubt doctrine. For the foregoing reasons, the Board finds that, throughout the rating period, the preponderance of the evidence is against an initial compensable evaluation for hypertension, the benefit of the doubt doctrine is not applicable. 38 U.S.C.A. § 5107(b).

Extraschedular Consideration

The Board found, in the prior decision, that extraschedular evaluation is not warranted. An extraschedular evaluation is inextricably intertwined with a schedular rating. However, no additional evidence or contentions have been submitted or made to the Board regarding extraschedular referral. Therefore, the Board continues to find that an extraschedular evaluation is not warranted. 

As stated in the prior decision, the first of the three elements of an extraschedular rating under § 3.321(b)(1) is a finding of either the RO or the Board that the evidence "presents such an exceptional or unusual disability picture that the available schedular evaluations for that service-connected disability are inadequate." See Thun v. Peake, 22 Vet. App. 111, 115 (2008), aff'd, 572 F.3d 1366 (Fed. Cir. 2009). In order to determine whether a disability is "exceptional or unusual," there "must be a comparison between the level of severity and symptomatology of the claimant's service-connected disability with the established criteria found in the rating schedule for that disability." Thun, 22 Vet. App. at 115. "[I]f the [rating] criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule, [and] the assigned schedular evaluation is, therefore adequate, and no referral is required." Id.

Neither the first nor second Thun element is satisfied here. The Veteran's service-connected hypertension is manifested by high blood pressure readings and headaches, which does not appear to affect his ability to function. The Veteran's headache disability (associated with high blood pressure) has been service-connected and assigned a noncompensable evaluation. The signs and symptoms of high blood pressure readings are contemplated by the rating schedule. The diagnostic codes in the rating schedule corresponding to hypertensive vascular disease specifically evaluate disabilities based on blood pressure readings. See 38 C.F.R. 4.104 DC 7101. 

For these reasons, the Board concludes that the schedular rating criteria reasonably describe the Veteran's disability picture, which is manifested by high blood pressure readings. In short, there is nothing exceptional or unusual about the Veteran's hypertension disability because the rating criteria reasonably describe his disability level and symptomatology. Thun, 22 Vet. App. at 115.

The Board does not find it necessary to discuss whether "related factors" are present as referral is not warranted based on the above discussion. See Bagwell v. Brown, 9 Vet. App. 337 (1996); Shipwash v. Brown, 8 Vet. App. 218, 227 (1995).

Finally, the Board notes that a Veteran may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture all the service-connected disabilities experienced. Johnson v. McDonald, 762 F.3d 1362 (2014). The Veteran has not indicated that he believes the assigned schedular rating to be inadequate or that the schedular criteria do not adequately describe or reflect his symptomatology as to these other service-connected disabilities. Further, the Veteran has at no point during the current appeal indicated that his service-connected disabilities in combination with his service-connected hypertension results in further disability when looked at in combination. Therefore, the Board finds that the schedular criteria adequately describe the Veteran's service-connected hypertension. Accordingly, this is not an exceptional circumstance in which extraschedular consideration may be required to compensate the Veteran for a disability that can be attributed only to the combined effect of multiple conditions. Therefore, extraschedular consideration is not warranted under Johnson.


ORDER

Entitlement to an initial compensable evaluation for hypertension has not been met.



____________________________________________
H. N. SCHWARTZ
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs