Citation Nr: 1829320 
Decision Date: 05/25/18 Archive Date: 06/12/18

DOCKET NO. 13-17 665 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Nashville, Tennessee


THE ISSUES

1. Entitlement to a disability rating in excess of 20 percent for degenerative disc disease (DDD) of the lumbar spine. 

2. Entitlement to a disability rating in excess of 20 percent for right leg radiculopathy affecting the sciatic and common peroneal nerves. 

3. Entitlement to a disability rating in excess of 20 percent for left leg radiculopathy affecting the sciatic and common peroneal nerves.

4. Entitlement to a disability rating in excess of 20 percent for residuals of left shoulder fracture with status post left rotator cuff repair. 

5. Entitlement to a total disability rating for individual unemployability (TDIU) due to service-connected disabilities prior to September 15, 2016.



REPRESENTATION

Appellant represented by: Karl A. Kazmierczak, Esq.


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

D. Van Wambeke, Counsel


INTRODUCTION

The Veteran served on active duty from July 1985 to April 1988. 

These matters come before the Board of Appeals for Veterans Claims (Board) on appeal from rating decisions issued by a Department of Veterans Affairs (VA) Regional Office (RO) in May 2011 and July 2011. 

The Veteran testified at a videoconference hearing before the undersigned Veterans Law Judge in March 2016. A transcript is of record. The Board remanded the claims in May 2016 for additional development. 

In an October 2017 rating decision, the RO recharacterized the left and right leg radiculopathy disabilities as radiculopathy of the left and right lower extremities affecting the sciatic and common peroneal nerves, granted service connection radiculopathy of the left and right lower extremities affecting the femoral and cutaneous nerves, granted service connection for a left shoulder scar, and granted entitlement to a TDIU effective September 15, 2016. The previously-styled claims involving left and right leg radiculopathy and the claim for entitlement to a TDIU, have been recharacterized as reflected on the title page. The Veteran did not appeal the decision with respect to the newly service-connected radiculopathy of the femoral and cutaneous nerves or the shoulder scar, and those issues are not before the Board. 38 C.F.R. § 20.200.

The issues of entitlement to a disability rating in excess of 20 percent for residuals of left shoulder fracture with status post left rotator cuff repair and entitlement to a TDIU prior to September 15, 2016, are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. The Veteran's lumbar spine disability has not been manifested by forward flexion of the thoracolumbar spine of 30 degrees or less; or favorable ankylosis of the entire thoracolumbar spine; or incapacitating episodes of disc syndrome having a total duration of at least 4 weeks but less than 6 weeks during the past 12 months. 

2. The Veteran has no more than mild incomplete paralysis of the sciatic and common peroneal nerves in both lower extremities. 


CONCLUSIONS OF LAW

1. The criteria for a rating in excess of 20 percent for DDD of the lumbar spine have not been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. § 4.71a, Diagnostic Code 5243 (2017).

2. The criteria for a rating in excess of 20 percent for right leg radiculopathy affecting the sciatic and common peroneal nerves have not been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §4.124a, Diagnostic Code 8520, 8620, 8720 (2017).

3. The criteria for a rating in excess of 20 percent for left leg radiculopathy affecting the sciatic and common peroneal nerves have not been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §4.124a, Diagnostic Code 8520, 8620, 8720 (2017).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Board has reviewed all the evidence in the record. Although the Board has an obligation to provide adequate reasons and bases supporting this decision, there is no requirement that the evidence submitted by the appellant or obtained on his behalf be discussed in detail. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) and Timberlake v. Gober, 14 Vet. App. 122, 128-30 (2000).

Except as otherwise provided by law, a claimant has the responsibility to present and support a claim for benefits under the laws administered by VA. VA shall consider all information and medical and lay evidence of record. Where there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, VA shall give the benefit of the doubt to 
the claimant. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

The Board notes that actions requested in the prior remand have been undertaken. In this regard, additional VA treatment records were obtained and VA examinations 
were provided. Accordingly, the Board finds that there has been substantial compliance with the prior remand instructions and no further action is necessary. See D'Aries v. Peake, 22 Vet. App. 97 (2008) (holding that only substantial, and not strict, compliance with the terms of a Board remand is required pursuant to Stegall v. West, 11 Vet. App. 268 (1998)). The Board acknowledges the Veteran's attorney's assertion that the VA examiner who examined the lumbar spine disability in September 2016 failed to document at what point during range of motion testing pain started, which is information important to determine the presence of ankylosis. The Board disagrees since there is no indication the Veteran's lumbar spine exhibited fixation in flexion, extension, or at zero 
degrees due to pain (as required for a finding of favorable or unfavorable ankylosis, discussed more fully below) and the examiner specifically noted the absence of ankylosis. 

Disability ratings are determined by applying the criteria set forth in the VA Schedule of Rating Disabilities (Rating Schedule) and are intended to represent the average impairment of earning capacity resulting from disability. 38 U.S.C. § 1155; 38 C.F.R. § 4.1. Separate diagnostic codes identify the various disabilities. Disabilities must be reviewed in relation to their history. 38 C.F.R. § 4.1. Other applicable, general policy considerations are: interpreting reports of examination in light of the whole recorded history, reconciling the various reports into a consistent picture so that the current rating many accurately reflect the elements of disability, 38 C.F.R. § 4.2; resolving any reasonable doubt regarding the degree of disability in favor of the claimant, 38 C.F.R. § 4.3; where there is a questions as to which of two evaluations apply, assigning a higher of the two where the disability pictures more nearly approximates the criteria for the next higher rating, 38 C.F.R. § 4.7; and, evaluating functional impairment on the basis of lack of usefulness, and the effects of the disability upon the person's ordinary activity, 38 C.F.R. § 4.10. See Schafrath v. Derwinski, 1 Vet. App. 589 (1991). 

A claimant may experience multiple distinct degrees of disability that might result in different levels of compensation from the time the increased rating claim was filed until a final decision is made. Thus, separate ratings can be assigned for separate periods of time based on the facts found - a practice known as "staged" ratings. Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007).

Disability of the musculoskeletal system is primarily the inability, due to damage or inflammation in parts of the system, to perform normal working movements of the body with normal excursion, strength, speed, coordination and endurance. The functional loss may be due to absence of part or all of the necessary bones, joints and muscles, or associated structures, or to deformity, adhesions, defective innervation, or other pathology, or may be due to pain, supported by adequate pathology and evidenced by visible behavior of the claimant undertaking the motion. Weakness is as important as limitation of motion, and a part which becomes painful on use must be regarded as disabled. See DeLuca v. Brown, 
8 Vet. App. 202 (1995); 38 C.F.R. § 4.40 (2017); see also 38 C.F.R. §§ 4.45, 4.59 (2017). Although pain may be a cause or manifestation of functional loss, limitation of motion due to pain is not necessarily rated at the same level as functional loss where motion is impeded. See Mitchell v. Shinseki, 25 Vet. 
App. 32 (2011).

Entitlement to a disability rating in excess of 20 percent 
for DDD of the lumbar spine

Service connection for the lumbar spine disability was originally established in an April 2003 rating decision. The Veteran filed a claim for an increased rating in November 2010. The lumbar spine disability is currently rated as 20 percent disabling pursuant to 38 C.F.R. § 4.71a, Diagnostic Code 5243. 

Disabilities of the spine are to be rated under the General Rating Formula for Diseases and Injuries of the Spine (General Rating Formula). 38 C.F.R. § 4.71a, Diagnostic Codes 5235-5243. These criteria are to be applied irrespective of whether there are symptoms such as pain (whether or not it radiates), stiffness, or aching in the affected area of the spine, and they "are meant to encompass and take into account the presence of pain, stiffness, or aching, which are generally present when there is a disability of the spine." 68 Fed. Reg. 51,454 (Aug. 27, 2003). Any associated objective neurologic abnormalities are to be rated separately from orthopedic manifestations under an appropriate diagnostic code. 38 C.F.R. § 4.71a, Note (1).

Ratings in excess of 20 percent pertinent to the lumbar spine are provided for forward flexion of the thoracolumbar spine to 30 degrees or less; or, favorable ankylosis of the entire thoracolumbar spine (40 percent); for unfavorable ankylosis of the entire thoracolumbar spine (50 percent); and for unfavorable ankylosis of the entire spine (100 percent). Id. 

For VA compensation purposes, unfavorable ankylosis is a condition in which the entire thoracolumbar spine or the entire spine is fixed in flexion or extension and the ankylosis results in one or more of the following: difficulty walking because of a limited line of vision; restricted opening of the mouth and chewing; breathing limited to diaphragmatic respiration; gastrointestinal symptoms due to pressure of the costal margin on the abdomen; dyspnea or dysphagia; atlantoaxial or cervical subluxation or dislocation; or neurologic symptoms due to nerve root stretching. Fixation of a spinal segment in neutral position (zero degrees) always represents favorable ankylosis. Id. at Note (5).

Note (2) of the General Rating Formula provides that for VA compensation purposes, normal forward flexion of the thoracolumbar spine is zero to 90 degrees, extension is zero to 30 degrees, left and right lateral flexion are zero to 30 degrees, and left and right lateral rotation are zero to 30 degrees. The normal combined range of motion of the thoracolumbar spine is 240 degrees. See also Plate V, 38 C.F.R. § 4.71a.

Alternatively, intervertebral disc syndrome (IVDS) can be rated under the Formula for Rating IVDS Based on Incapacitating Episodes (IVDS Formula). This formula provides a 40 percent rating for IVDS with incapacitating episodes having a total duration of at least 4 weeks but less than 6 weeks during the past 12 months; and a 60 percent rating for IVDS with incapacitating episodes having a total duration of at least 6 weeks during the past 12 months. An incapacitating episode is defined as a period of acute signs and symptoms due to IVDS that requires bed rest prescribed by a physician and treatment by a physician. See 38 C.F.R. § 4.71a, Note (1).

The Veteran seeks a rating in excess of 20 percent for his lumbar spine disability. He contends that the condition has worsened, as shown on magnetic resonance imaging (MRI) and that he had been referred for physical therapy and treatment at a pain clinic. In March 2016, he testified that his back had gotten to the point where he could not sit or stand for very long periods of time and could not walk more than 40 to 50 feet without having to stop and rest. He indicated that if he was driving, he has to stop every 30 to 40 miles to take a break and stretch. The Veteran testified to using a cane pretty much every day; having pain at a level seven on a daily basis, even with the use of pain medications; that his back pain affected his sleep because he was unable to get comfortable at night and he would wake up due to pain and spasms; and that he could not bend over to pick things up. When asked if he has really bad days, the Veteran testified that he did, especially if a cold front or rain was coming in and he described being down for the count on those days and not being able to do anything, which had happened a couple times, could last a couple of days, and had been so bad that he had needed help in the bathroom and to bathe. 

The preponderance of the evidence is against the assignment of a rating in excess of 20 percent for DDD of the lumbar spine. The Board acknowledges the Veteran's assertions. It also notes that treatment records corroborate that he underwent physical therapy for his spine and that he also received treatment at a pain clinic. In order to merit the assignment of the next highest (40 percent) rating provided under the General Rating Formula, however, the evidence must show that the Veteran had forward flexion of the thoracolumbar spine of 30 degrees or less; or favorable ankylosis of the entire thoracolumbar spine. The evidence in this case does not show either. Rather, the Veteran's thoracolumbar spine exhibited forward flexion limited, at worst, to 40 degrees, and the absence of ankylosis was consistently noted. See VA examination reports dated May 2010, January 2011, and September 2016; VA and private treatment records.

Consideration has been given to functional impairment and any effects of pain on functional abilities due to the Veteran's service-connected lumbar spine disability. The Board acknowledges the subjective complaints noted above in the lay evidence of record, as well as the objective evidence of functional impairment in the form of pain following repetitive motion during the May 2010 VA examination; the objective evidence of pain throughout the entire range of motion during the January 2011 VA examination; and the objective evidence of pain causing functional loss during forward flexion, extension, bilateral lateral flexion, and bilateral lateral rotation during the September 2016 VA examination. In this case, the Board does not find any additional functional loss which is not contemplated by the currently assigned 20 percent rating. The Veteran has described functional limitations which are contemplated in the schedular criteria, see 68 Fed. Reg. 51,454, and the Veteran himself has not described additional motion loss or functional impairments during flare-ups which meets or more nearly approximates the criteria for the next higher (40 percent) rating. In light of the foregoing, the Board finds that a rating in excess of the 20 percent rating for the Veteran's lumbar spine disability is not warranted based on functional impairment. 38 C.F.R. §§ 4.40, 4.45 (2017); DeLuca, 8 Vet. App. at 204-06.

Nor is the assignment of an increased rating for the Veteran's lumbar spine disability warranted under the IVDS Formula. This is so because there is no evidence of incapacitating episodes having a total duration of at least 4 weeks but less than 6 weeks during the past 12 months. The Board acknowledges that during the May 2010 VA examination, the Veteran reported that he had been "down" on bed rest seven different times in the last year for four to five days; however, on further questioning by the examiner, the Veteran denied going to a physician during any of these episodes or being prescribed bed rest by a physician and instead indicated that he took to bed rest on his own accord. The Board also acknowledges that the Veteran testified in March 2016 that he would be down for the count for a couple of days, during which he would not be able to do anything; during the September 2016 VA examination, however, he denied any episodes of acute signs and symptoms due to IVDS that required bed rest prescribed by a physician and treatment by a physician in the past 12 months and none of the private or VA treatment records indicate that any bed rest was prescribed.

The Board has also considered whether the Veteran's service-connected lumbar spine disability manifests any associated objective neurologic abnormalities other than the already service-connected radiculopathies of the lower extremities so as to warrant a separate rating under an appropriate diagnostic code. See 38 C.F.R. § 4.71a, Note (1). The Board acknowledges that an October 2009 VA treatment record noted that the Veteran had some urinary symptoms. There is no indication that the urinary symptoms were positively attributed to the lumbar spine disability in either VA or private treatment records and a July 2014 VA treatment record documents that complaint of difficulty urinating resulted in an assessment of urinary hesitance due to known history of benign prostatic hypertrophy (BPH), not the lumbar spine disability. Moreover, the examiner who conducted the September 2016 VA examination did not find that there were any other neurologic abnormalities other than those noted in the lower extremities. For these reasons, a separate rating for other neurological abnormalities is not warranted in this case.

Entitlement to a disability rating in excess of 20 percent for right and left leg radiculopathy affecting the sciatic and common peroneal nerves

Service connection for right and left leg radiculopathy was originally established in a December 2008 rating decision. As noted in the Introduction, the RO recharacterized the left and right leg radiculopathy disabilities as radiculopathy of the left and right lower extremities affecting the sciatic and common peroneal nerves in an October 2017 rating decision. These disabilities are currently rated as 20 percent disabling pursuant to 38 C.F.R. § 4.124a, Diagnostic Code 8720. The Board notes the Veteran is separately rated for bilateral lower extremity radiculopathy affecting the femoral and cutaneous nerves. Thus, the symptomatology associated with those conditions cannot be considered in evaluating the lower extremity radiculopathy of the sciatic and common peroneal nerves. 38 C.F.R. § 4.14 (the evaluation of the same manifestation or disability under different diagnoses is to be avoided).

Diagnostic Codes 8520, 8620, and 8720 provide ratings for paralysis, neuritis, and neuralgia of the sciatic nerve. Ratings of 10, 20, 40 and 60 percent are assigned for incomplete paralysis that is mild, moderate, moderately severe, and severe, with marked muscle atrophy, respectively. An 80 percent rating is assigned for complete paralysis of the sciatic nerve; the foot dangles and drops, no active movement possible of muscles below the knee, flexion of knee weakened or (very rarely) lost. 38 C.F.R. § 4.124a.

Diagnostic Codes 8521, 8621, and 8721 provide ratings for paralysis, neuritis, and neuralgia of the external popliteal nerve (common peroneal) nerve. Ratings of 10, 20, and 30 are assigned for incomplete paralysis that is mild, moderate, and severe, respectively. A 40 percent rating is assigned for complete paralysis of the external popliteal nerve (common peroneal) nerve; foot drop and slight droop of first phalanges of all toes, cannot dorsiflex the foot, extension (dorsal flexion) of proximal phalanges of toes lost; abduction of foot lost, adduction weakened; anesthesia covers entire dorsum of foot and toes. Id.

In rating diseases of the peripheral nerves, the term "incomplete paralysis" indicates a degree of lost or impaired function substantially less than the type picture for complete paralysis given with each nerve, whether due to varied level of the nerve lesion or to partial regeneration. 38 C.F.R. § 4.124a. When the involvement is wholly sensory, the rating should be for the mild, or at most, the moderate degree. Id. The ratings for peripheral nerves are for unilateral involvement; when bilateral, they are combined with application of the bilateral factor. Id. 

In rating peripheral nerve injuries and their residuals, attention should be given to the site and character of the injury and the relative impairment in motor function, trophic changes, or sensory disturbances. 38 C.F.R. § 4.120. Descriptive words such as "mild," "moderate," "moderately severe" and "severe" are not defined in the Rating Schedule. Rather than applying a mechanical formula, the Board must evaluate all of the evidence to the end that its decisions are "equitable and just." 38 C.F.R. § 4.6. The use of descriptive terminology by medical examiners, although an element of evidence to be considered by the Board, is not dispositive of an issue. All evidence must be evaluated in arriving at a decision. 38 U.S.C. § 7104(a); 38 C.F.R. §§ 4.2, 4.6.

The Veteran testified in March 2016 that his legs were giving away out from under his weight and pressure and that they were locking up and releasing. He described the pain as aching and described his legs feeling like they weighed a ton at times. He reported that when he tried to walk, he had pain in both hips, especially when walking on harder surfaces like concrete. The Veteran also testified that he had numbness and tingling at times and it would go down below his buttocks, to the back part of his knee caps, and on the back side of his legs. It did not bother him as much when he sat, but if he was walking or trying to move or stand up, the pain would increase. 

During a January 2011 VA examination, neurologic review of symptoms indicated that there was a history of weakness and numbness in the lower extremities, but no history of paresthesias or poor coordination. Neurologic examination revealed normal coordination. Detailed reflex examination showed hypoactive bilateral knee and ankle jerk; plantar flexion was normal bilaterally. Sensory examination noted numb, weak lower extremities. Detailed motor examination showed active movement against full resistance with bilateral hip flexion and extension, bilateral knee flexion and extension, bilateral ankle dorsiflexion and plantar flexion, and bilateral great toe extension. Muscle tone was normal and there was no muscle atrophy.

During a September 2016 back Disability Benefits Questionnaire (DBQ), reflex examination continued to show hypoactive reflexes in both knees and both ankles. Sensory examination showed normal sensation to light touch in both upper anterior thighs (L2), and decreased sensation to light touch in both thighs/knees (L3), lower legs/ankles (L4/L5/S1), and feet/toes (L5). Straight leg raise testing was bilaterally positive. The examiner noted that the Veteran had radicular pain/other signs or symptoms due to radiculopathy, to include moderate intermittent pain in the right lower extremity and severe intermittent pain in the left lower extremity, and mild parethesias and/or dysesthesias and mild numbness in both lower extremities. Nerve roots involved included sciatic nerves and the severity of the radiculopathy was noted to be moderate on both sides. 

During a September 2016 peripheral nerves conditions DBQ, in addition to the same findings as noted during the back DBQ, the examiner reported muscle strength testing showed active movement against some resistance with bilateral knee extension, bilateral ankle plantar flexion, and bilateral ankle dorsiflexion. There was no muscle atrophy and no trophic changes. The examiner reported that both sciatic nerves and both external popliteal (common peroneal) nerves had mild incomplete paralysis. The Veteran had regular use of a cane. The functional impact was that the bilateral radiculopathy occurred with prolonged standing and walking. 

The preponderance of the evidence is against the assignment of ratings in excess of 20 percent for radiculopathy of the left and right lower extremities affecting the sciatic and common peroneal nerves under Diagnostic Code 8720. The next highest (40 percent) rating requires moderately severe incomplete paralysis. In this case, neither lower extremity has objective findings that would equate to moderately severe incomplete paralysis. Rather, during the January 2011 VA examination, although reflex examination revealed hypoactive reflexes with bilateral knee and ankle jerk, the Veteran's coordination was normal, there was only slight reduction in motor strength, and muscle tone was normal without atrophy. There was no change in reflexes or the findings during motor/muscle strength testing between the January 2011 and September 2016 examinations, and the September 2016 examination continued to show the absence of muscle atrophy. Moreover, the September 2016 peripheral nerves VA examiner indicated there was only mild incomplete paralysis of these nerves. In addition to these findings, treatment records reveal that the Veteran moved his bilateral lower extremity against gravity without focal deficit in September 2013, August 2015 and January 2016, and that his lower extremities moved equally and were intact to light touch in June 2015. These findings do not support a finding of moderately severe incomplete paralysis so as to support the assignment of ratings in excess of 20 percent for the radiculopathy of the left and right lower extremities affecting the sciatic and common peroneal nerves under Diagnostic Code 8720. 


Additional Considerations

The Board has considered whether the Veteran's disabilities present an exceptional or unusual disability picture as to render impractical the application of the regular schedular standards such that referral to the appropriate officials for consideration of extraschedular ratings is warranted. See 38 C.F.R. § 3.321(b)(1) (2017); Bagwell v. Brown, 9 Vet. App. 337, 338-39 (1996). The threshold factor is whether the disability picture presented in the record is adequately contemplated by the rating schedule. Thun v. Peake, 22 Vet. App. 111, 118 (2008). 

Here, although the Veteran's attorney asserts that the Veteran is entitled to extraschedular ratings for his service-connected disabilities, the Board finds that the rating criteria reasonably describe the Veteran's lumbar spine and bilateral lower extremity disability levels and symptomatology. 

For all musculoskeletal disabilities, the rating schedule contemplates functional loss, which may be manifested by, for example, decreased or abnormal excursion, strength, speed, coordination, or endurance. 38 C.F.R. § 4.40 (2017); Mitchell, 25 Vet. App. 32, 37. For disabilities of the joints in particular, the rating schedule specifically contemplates factors such as weakened movement, excess fatigability, and interference with weight bearing. 38 C.F.R. §§ 4.45, 4.59; Mitchell, 25 Vet. App. at 37. Thus, the schedular criteria for musculoskeletal disabilities contemplate a wide variety of manifestations of functional loss. Given the variety of ways in which the rating schedule contemplates functional loss for musculoskeletal disabilities, the Board concludes that the schedular rating criteria reasonably describe the Veteran's lumbar spine disability picture, and referral for extraschedular consideration is not warranted. 

Nor is the Veteran's disability picture so unusual or exceptional in nature as to render the schedular evaluations assigned for his service-connected radiculopathies inadequate. In this regard, pain, weakness, fatigue, tingling, numbness, swelling and paresthesias are contemplated by the rating schedule. As the Veteran's disability picture is contemplated by the rating schedule, the assigned schedular evaluations are, therefore, adequate. Accordingly, referral for extraschedular consideration for these disabilities is not warranted. 

The Board acknowledges that it is remanding the claim for entitlement to a TDIU prior to September 15, 2016, and that the Veteran's claim for a TDIU is based in part on his service-connected lumbar spine and bilateral lower extremity disabilities. However, as noted above, any impact on the Veteran's employment would need to be considered for extraschedular purposes only if the schedular criteria are inadequate to rate his service-connected disabilities. Id. at 118 ("[I]n cases regarding whether extraschedular referral is warranted, the threshold determination is whether the disability picture presented in the record is adequately contemplated by the rating schedule."). As the schedular ratings adequately contemplate his lumbar spine and radiculopathy disabilities, referral for extraschedular consideration is not warranted.

In reaching the above conclusions, the Board has considered the applicability of the benefit of the doubt doctrine. However, as the preponderance of the evidence is against ratings higher than those assigned, the doctrine is not applicable. See 38 U.S.C. § 5107(b) (2012); Ortiz v. Principi, 274 F.3d 1361, 1364 (Fed. Cir. 2001); Gilbert v. Derwinski, 1 Vet. App. 49, 55-56 (1990).

ORDER

A disability rating in excess of 20 percent for DDD of the lumbar spine is denied. 

A disability rating in excess of 20 percent for right leg radiculopathy affecting the sciatic and common peroneal nerves is denied. 

A disability rating in excess of 20 percent for left leg radiculopathy affecting the sciatic and common peroneal nerves is denied.


REMAND

During a September 2016 VA shoulder and arm conditions DBQ, the examiner reported that reduction in left shoulder muscle strength was entirely due to the diagnosed conditions. The Board finds that a muscle injuries examination would be beneficial to determine whether the Veteran may be more appropriately rated under a diagnostic code pertaining to muscle injuries involving the shoulder girdle or arm. 

The claim for entitlement to a TDIU prior to September 15, 2016, is inextricably intertwined with the claim for a rating in excess of 20 percent for residuals of left shoulder fracture with status post left rotator cuff repair. See Harris v. Derwinski, 1 Vet. App. 180, 183 (1990) (issues are inextricably intertwined when they are so closely tied together that a final Board decision cannot be rendered unless all are adjudicated).

Accordingly, the case is REMANDED for the following action:

1. Schedule the Veteran for a VA muscle injuries examination to determine whether the service-connected residuals of left shoulder fracture with status post left rotator cuff repair includes manifestations that would be more appropriately rated under a diagnostic code pertaining to muscle injuries involving the shoulder girdle or arm. The claims file should be reviewed by the examiner. All appropriate tests and studies should be conducted and the results reported in detail.

2. After undertaking the development above and any additional development deemed necessary, the Veteran's left shoulder and TDIU claims should be readjudicated. If the benefits sought on appeal remain denied, the appellant and his representative should be furnished a supplemental statement of the case and be given an appropriate period to respond thereto before the case is returned to the Board, if in order. 

The appellant has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).
This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C. §§ 5109B, 7112 (2012).




______________________________________________
K. A. BANFIELD 
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs